The STATE of Wyoming on the Relation
of MOTOR VEHICLE DIVISION, a
State Agency, Petitioner,

v.

Honorable John HOLTZ, Respondent.

No. 83–152.

Supreme Court of Wyoming.

Dec. 12, 1983.

A.G. McClintock, Atty. Gen., Ron Arnold, Senior Asst. Atty. Gen., for petitioner.

Daniel E. White, Vines, Gusea & White, P.C., Cheyenne, for respondent.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

PER CURIAM.

Petitioner requested this court to issue a Writ of Mandamus directing Respondent to complete and furnish to the Motor Vehicle Division of the Department of Revenue and Taxation (hereinafter referred to as Division) certain forms reflecting court action and other matters concerning cases before the court involving the charge of Driving While Under the Influence of Intoxicants or Drugs (hereinafter referred to as DWUI). We issued an Alternate Writ of Mandamus directing Respondent to complete and furnish such forms or to show cause for not doing so. The issues were briefed by both parties, and Respondent did show such cause.

Wherefore an order shall issue contemporaneously with this opinion quashing the Alternate Writ of Mandamus and denying the Motion for a Peremptory Writ of Mandamus.

## BACKGROUND

This matter is the consequence of two legislative enactments, the administration and execution of which result in a discord between (1) the Division, and (2) the county courts and justice of the peace courts (hereinafter referred to as Courts) exercising jurisdiction over DWUI violations. In this opinion, we will go somewhat beyond the scope necessary to dispose of the case in anticipation that the inconsistencies and administrative problems in and from the present statutes will result in corrective legislation.

For many years, the Courts would sentence those found guilty of violation of the DWUI statutes to either fine or imprisonment, and this disposition was relayed to the Division—usually by the arresting agency—where it was entered on the Division records. When the prior convictions of DWUI or violations of other motor vehicle requirements were sufficient for consideration of suspension or revocation of the driver's license, the Division would notify the violator of its intention to suspend or revoke his privilege to operate a motor vehicle on the highways of the state, afford him a hearing if necessary, and take appropriate action relative to the suspension or revocation of his license.

During the last three or four years, the legislature has increased the penalty which the Courts can and must impose for DWUI violations, making it more severe as the number of prior DWUI convictions of the driver increased. This, in a laudable effort to take the drunk or drugged driver off the roads. Section 31–5–233, W.S.1977, Cum. Supp.1983, as amended by Ch. 15, § 1, Session Laws of Wyoming, 1979, Ch. 58, § 1, Session Laws of Wyoming, 1980, Ch. 12, § 1, Session Laws of Wyoming, 1981, Ch. 50, § 1, and Ch. 52, § 1, Session Laws of Wyoming, 1982.

Subsection (e) of § 31–5–233 now reads: "Every person convicted under this section shall, in addition to the penalty above provided, have his driver's license suspended at the time of conviction by the court. The court shall forward the license to the motor vehicle division of the Wyoming tax commission. Upon first conviction only, the court may issue to the person a temporary license which shall be valid for a period of thirty (30) days. The division shall provide the court with forms for issuance of the temporary licenses, including notification of the person's right to a hearing pursuant to W.S. 31–7–127(e). The temporary license may be extended by the division until the hearing provided for in W.S. 31–7–127(e) is held."

Section 31–7–127, W.S.1977, Cum.Supp. 1983, provides in part:

"(d) Upon conviction under W.S. 31–5–233, the license shall be:

"(i) For the first conviction, suspended for three (3) months from the date of the expiration of the temporary license issued under W.S. 31–5–233(e);

"(ii) For the second conviction, suspended for one (1) year from the date of the expiration of the temporary license issued under W.S. 31–5–233(e);

"(iii) For the third conviction, revoked.

"(e) After suspension or revocation under subsection (d) of this section, the licensee shall have twenty (20) days from date of conviction within which to request the [a] hearing. If requested, the hearing shall be held within forty-five (45) days after receipt of the request. For a first conviction only, upon hearing and demonstration that undue hardship would result from a mandatory suspension, the division may suspend or amend the requirements of license suspension if the person agrees to pursue and completes an alcohol education or treatment program as the division prescribes."

The first sentence of § 31–5–233(e), supra, can be said to direct *the court* to suspend the driver's license of the defendant:

"Every person convicted under this section shall, in addition to the penalty above provided, *have his driver's license suspended* at the time of conviction *by the court.*" (Emphasis added.)

Or, this sentence can be read as directing the suspension of the driver's license when convicted by the court but with the suspension to be accomplished in the historical manner:

"Every person convicted under this section shall, in addition to the penalty above provided, have his driver's license suspended *at the time of conviction by the court.*" (Emphasis added.)

■ If the direction is to have the court suspend the license, the criminal "penalty above provided" would be increased by the suspension of the driver's license of the person convicted—a result which would be entirely within the power of the legislature to direct. But when read in pari materia and by giving effect to the other provisions of the statutes, the manifested intent of the legislature is to have the Courts impose a fine and jail sentence and to have the Division suspend or revoke the driver's license, i.e., "by the court" in the first sentence of § 31–5–233(e), supra, modifies "time of conviction" and not "have his driver's license suspended." [1] All statutes must be construed in pari materia. In ascertaining the meaning of a given law, all statutes relating to the same subject or having the same general purpose must be considered and construed in harmony. *Brinegar v. Clark,* Wyo., 371 P.2d 62 (1962); and *Stringer v. Board of County Commissioners of Big Horn County,* Wyo., 347 P.2d 197 (1959).

The portions of § 31–7–127, other than subsections (d) and (e), supra, set forth the procedure and conditions for suspension and revocation of a driver's license *by the Division* after convictions for multiple violations of other traffic laws; § 31–7–105, W.S. 1977, Cum.Supp.1983, creates the office of hearing examiner to sit as an administrative hearing agency of the Division for review of "all matters arising from driver's license and related matters including suspension." Section 31–7–127(d), supra, provides that the Division shall suspend the driver's license for the specified period of time "from the date of the expiration of the temporary license" issued by the court.

■ There is no indication that the legislature intended the Division, an agency of the executive branch of the government, to act in an appellate capacity over the Courts, and, of course, such would be unconstitutional as a violation of the separation-of-powers doctrine. *Carter v. Board of County Commissioners of County of Laramie,* Wyo., 518 P.2d 142 (1974).[2] If the suspensions were accomplished by the Courts, the statutory duties of the Division would be either superfluous or appellate. As noted,

1. Other than in the first sentence the provisions of § 31–5–233(e), supra, requiring the court to issue a temporary driver's license and to collect the driver's license, violate Art. 2, § 1 of the Wyoming Constitution (see fn.2, infra) as more particularly noted under the Seventh Issue in the Issues section of this opinion.

2. Art. 2, § 1 of the Wyoming Constitution provides:

"The powers of the government of this state are divided into three distinct departments: The legislative, executive and judicial, and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted."

the latter would be unconstitutional. In other words, the historic intent to have the Courts impose fines and jail sentences on those found guilty of the crime of DWUI and to have the Division suspend and revoke drivers' licenses is still manifested in the statutes when considered in pari materia.

In construing statutes, legislative intent is the primary consideration. If the language is sufficiently clear, there is no need to resort to rules of construction. When the language is not clear or is ambiguous, the court must look to the mischief the statute was intended to cure, the historical setting surrounding its enactment, the public policy of the state, the conclusions of law, and other prior and contemporaneous facts and circumstances, making use of the accepted rules of construction to ascertain a legislative intent that is reasonable and consistent. *Sanches v. Sanches,* Wyo., 626 P.2d 61 (1981); *State ex rel. Albany County Weed and Pest District v. Board of County Commissioners of County of Albany,* Wyo., 592 P.2d 1154 (1979); *Saffels v. Bennett,* Wyo., 630 P.2d 505 (1981); *Basin Electric Power Cooperative v. State Board of Control,* Wyo., 578 P.2d 557 (1978); *In re Romer,* Wyo., 436 P.2d 956 (1968).

Nevertheless, the language in § 31–5–233(e), supra, authorizing suspension of a driver's license "by the court" "at the time of conviction," and the language therein directing the court to take custody of the driver's license of one convicted of DWUI and to forward the same to the Division, have caused confusion and varied interpretations thereof, not only within and between the Courts and the Division, but also and more importantly to many members of the public generally.

In a typical situation, John Doe is arrested for DWUI. When brought before the court, the complaint or information reflects one prior conviction for DWUI within the year in a Wyoming state court. After a guilty plea, he is sentenced to thirty days imprisonment and a fine of $500.00, with the execution of the jail sentence in excess of seven days being suspended upon defendant's agreement to pursue and complete a prescribed treatment program.[3] Shortly thereafter, he receives a communication from the Division which reads in part:

" * * * The Notice of SUSPENSION/REVOCATION given to you by the Court indicated that this was your <u>second (2nd)</u> conviction. THAT NOTICE IS INCORRECT.

\* \* \* \* \* \*

---

3. Section 31–5–233, W.S.1977, Cum.Supp.1983, supra, provides in part:

"(d) Except as provided in subsection (g) of this section, a person convicted of violating this section is guilty of a misdemeanor punishable by imprisonment for not more than six (6) months or a fine of not more than seven hundred fifty dollars ($750.00). On a subsequent conviction within five (5) years after a conviction for a violation of this section, he shall be punished by imprisonment for not less than seven (7) days nor more than six (6) months and shall not be eligible for probation, pardon, parole, commutation or suspension of sentence or release on any other basis until he has served at least seven (7) days in jail. In addition, the person may be fined not less than two hundred dollars ($200.00) nor more than seven hundred fifty dollars ($750.00). The judge may suspend part or all of the discretionary portion of an imprisonment sentence under this subsection if the defendant agrees to pursue and completes an alcohol education or treatment program as prescribed by the judge.

\* \* \* \* \* \*

"(g) Whoever causes serious bodily injury to another person resulting from the violation of this section shall be punished as provided in paragraphs (i), (ii) and (iii) of this subsection. As used in this subsection, 'serious bodily injury' means bodily injury which creates a reasonable likelihood of death or which causes miscarriage or serious permanent disfigurement or protracted loss or impairment of any bodily member or organ:

"(i) For a first conviction, by a fine of not more than five thousand dollars ($5,000.00), or by imprisonment in the county jail for not more than one (1) year, or both;

"(ii) For a subsequent conviction, by imprisonment in the penitentiary for not more than twenty (20) years; and

"(iii) Any person convicted under this subsection shall also have his driver's license revoked by the motor vehicle division and that person may not apply for a new license for a period of two (2) years after revocation. At the time of conviction, the court shall require the person to surrender his license, and the court shall forward the license to the division."

" * * * IT IS THEREFORE ORDERED that the Notice of SUSPENSION/REVOCATION issued by the _____ Court of _____ Wyoming be and is hereby amended. * * * "

John Doe thought he had concluded the matter by the court action. He, his friends and all to whom he speaks about the matter are surprised that the Division can "overrule" the court and change the court's sentence. The court is disturbed in finding that the case before it was not premised on all of the previous convictions, that the treatment program prescribed by the court was agreed to by the defendant without knowledge of all of the consequences of his conviction, and that the Division is alleging inaccuracy in the court's judgment which the Division is "overruling." The news media and the public generally find something inherently wrong in a criminal sentence gauged on "x" number of prior convictions and a license suspension or revocation gauged on "x-plus" number of prior convictions. Obviously, the petitioner does not fully understand the procedure inasmuch as it contends in its petition that the suspension or revocation of the license occurred at the time of conviction by "operation of law." If such were so, there would be no need for the hearing and other procedure provided by statute for the Division to follow in connection with such suspension or revocation.

■ There are two other aspects of the problem which have surfaced during the attempts to consistently carry out the directions of the statutes. One, the Courts recognize that they cannot enlarge on or change the plain and unambiguous provisions of a statute. *Croxton v. Board of County Commissioners of Natrona County*, Wyo., 644 P.2d 780 (1982); *Sanches v. Sanches,* supra. In this matter, the statutes are clear and unambiguous in restricting consideration of prior offenses to those convictions "under this act." Accordingly the Courts consider only those prior convictions which were obtained under § 31–5–233(e) [4] in computing the number of prior convictions which enhance the sentence. However, in computing prior convictions for suspension or revocation of drivers' licenses, the Division considers convictions for DWUI under the acts of other states regardless of whether or not the level of blood alcohol content for presumption purposes in the other states is less or more than that under the Wyoming statutes and whether or not there are other differences between the two statutes. The Division also considers convictions for DWUI in municipal courts for such purposes. Convictions in municipal courts are for violations of ordinances and not state statutes. This is true even if a state statute is copied verbatim in the ordinance or even if it is adopted as the ordinance by reference to it.

"(ix) 'Ordinance' means a legislative enactment of general effect validly adopted by the governing body of any city or town." Section 15–1–101(a)(ix), W.S.1977 (1981 Replacement).

"(b) All cities and towns are hereby empowered to determine their local affairs and government as established by ordinance passed * * * subject only to statutes uniformly applicable to all cities and towns * * *." Art. 13, § 1(b), Wyoming Constitution.

If the DWUI statutes were to be considered uniformly applicable to all cities and towns, the authority of the cities and towns to legislate by ordinance on DWUI would not exist and convictions could not be had in municipal courts. However, the DWUI statutes do not contain language making them exceptions to the municipal powers granted under the home rule provision of the constitution. Of course, one arrested for DWUI within the limits of a city can be charged under the state statute and be taken to the Courts (JP or county) for disposition rather than be charged under the ordinance and be taken to the municipal court for disposition. Some cities have repealed

---

**4.** Section 31–5–233(e), supra, begins by providing that: "Every person *convicted under this section* shall * * * " (emphasis added). Section 31–7–127, supra, begins: "Upon conviction *under W.S. 31–5–233* * * * " (emphasis added).

all DWUI ordinances to force such action. (The usual purpose being to avoid the expense of jury trials.)

In considering convictions for DWUI in municipal courts for purposes of suspension and revocation of drivers' licenses, the Division is undoubtedly giving attention to subsection (h) of § 31–5–233, supra, which provides:

"(h) Any person charged under this section shall be prosecuted under this section and not under a reduced charge. Ordinances of cities and towns are superseded to the extent inconsistent with this subsection."

The subsection presents a number of questions not pertinent to the issues in this matter. E.g., Does the "charge" refer to the information filed by the prosecuting attorney? Does the "reduced charge" refer to a lesser-included offense? If so, what is it? Is the jury precluded from convicting under the lesser-included offense, if there is one? Does the last sentence purport to make void all city and town DWUI ordinances so that DWUI violations in cities and towns cannot be presented to the municipal courts? Does it purport to enact ordinances for cities and towns? If it purports to do either of these things, is it the legislative intent to do so in view of the many other grants of power to municipal corporations inconsistent therewith? Etc. We need not address these questions for the purpose of determining whether or not such subsection authorizes consideration by the Division of DWUI convictions in municipal courts in connection with suspension or revocation of drivers' licenses inasmuch as the last sentence of the subsection specifically refers to ordinances "inconsistent with this *sub*section" (emphasis added). The subsection has to do with reduction of charges in cases prosecuted "under this section." Prosecution under a DWUI ordinance would not be "under this section," therefore, the prohibition against reduction of charges would have no application to prosecution under ordinances. In other words, the subsection does not pertain to anything concerning which an ordinance could be inconsistent.

Two, the statutory requirement that the sentence to be imposed by the court be more severe as the number of prior convictions of the defendant increases makes the statute a habitual criminal act. Before the sentence of a defendant can be enhanced under such act, he must have notice of the fact that such is contemplated. Generally, the notice must be contained in the information or charge under which he is prosecuted. *Evans v. State,* Wyo., 655 P.2d 1214 (1982). Section 6–10–203(a), W.S.1977 (1983 Replacement), provides:

"(a) An information or indictment which charges a person as an habitual criminal shall set forth the charged felony and allege the previous convictions."

Although here we are not concerned with felonies, the reason upon which this section is predicated is pertinent to the requirement of similar notice in DWUI cases. The California Supreme Court voices the reason as follows:

"A question is raised whether there is a requirement to further advise an accused with respect to the effect which a determination of habitual criminality will have on the punishment and other sanctions to be imposed upon the accused's conviction of the substantive crime charged. As stated, severe sanctions are at issue and there are numerous and complex circumstances in which those sanctions and the degrees thereof are to be made applicable. The consequences of an admission could, without imposing any undue burden on the judicial process, be explained to an accused in the interest of achieving justice both for the accused and the state. We deem these to be persuasive and compelling reasons in support of the rule urged and conclude accordingly that as a judicially declared rule of criminal procedure * * * an accused, prior to the time the court accepts his admission of an allegation of a prior criminal conviction or convictions, is entitled to be advised: (1) that he may thereby be adjudged an habitual criminal * * *; (2) of the precise

increase in the term or terms which might be imposed if any, in the accused's case * * *; and (3) of the effect of any increased term or terms of imprisonment on the accused's eligibility for parole. The failure to so advise an accused in the enumerated instances will constitute error which, if prejudice appears, will require the setting aside of a finding of the truth of an allegation of prior convictions." (Footnotes omitted.) *In re Yurko,* 10 Cal.3d 857, 112 Cal.Rptr. 513, 519 P.2d 561, 565–566 (1974).

"A person accused of crime as a recidivist is entitled to be informed by indictment or information that he is being charged as such. The pleading must allege all the facts that are necessary to bring the case within the statute authorizing enhanced punishment. * * *" 39 Am.Jur.2d, Habitual Criminals and Subsequent Offenders, § 20, p. 324.

Accordingly, the Courts cannot impose a sentence based on prior convictions unless such potential is made known to the defendant at a time when it can enter into his consideration in deciding upon his plea or a change therein. We may ultimately be faced with a question as to whether or not the Division can suspend or revoke a license on the basis of prior convictions when the driver was not given express notice that such could result at a time prior to court action in the case in which the conviction triggers the consideration of suspension or revocation. This issue is not now before us. As long as the Courts and the Division are working under different requirements, the space could further widen between that which the Courts can do in their sentencing with reference to prior convictions and that which the Division can do in revocation or suspension of the driver's license with reference to prior convictions. The result is public dissatisfaction with the entire process.

A few months ago, the prosecuting attorneys and the heads of law enforcement agencies in the state were directed to require the arresting officer presenting the case on a complaint or the assistant prosecuting attorney presenting the case on an information to first check with the Division and include the fact of prior convictions as contained in the Division records in the complaint or information so that the defendant would have the notice necessary for the imposition of any enhanced sentence by the court, and so that the Courts and Division would be proceeding on the same basis in this respect.[5] It was anticipated that the procedure would obviate the necessity for Division letters to defendants "overruling" the Courts' sentences until the legislature would have an opportunity to consider legislation to be suggested by the Division and the Courts. The filing of the petition in this case evidenced the fact that such efforts have not been successful.

Finally, with reference to the background of this matter, it should be noted that the legislation involved the Courts in the driver's license aspect of DWUI cases because of the difficulty encountered by the Division and prosecuting authorities in *enforcement* of a suspension or revocation of a driver's license. Prior to the legislation which required the Courts to collect the license at the time of conviction and issue temporary licenses, the Division sent letters to those convicted requesting return of the license and advising of the hearing procedures to determine the propriety, conditions and extent of suspension or revocation. Often the defendant did not receive the letter, or, at least, if he did, he contended that he did not receive it, and the license was not returned. Subsequent prosecution for driving without a valid license was made difficult by the inability to prove knowledge of the suspension.

This difficulty was helped considerably by involving the Courts in the process, but the other problems discussed supra were created. Corrective legislation could be (1) to include revocation and suspension of li-

---

**5.** Of course, this procedure would not resolve the difference resulting from the Division consideration of out-of-state and municipal convictions which could not be considered by the Courts.

censes as part of the penalty to be imposed for DWUI by the Courts, thus removing any discretion from the Division and leaving it with only the resulting ministerial functions relative thereto pursuant to the judgment and sentence of the Courts, or (2) to not involve the Courts in license suspensions or revocations in any way, making provisions for the arresting officer to collect the driver's license and to issue a temporary license to be valid until the Division processes the result of the arrest. The second method would not prevent a disparagement relative to the number of prior convictions between the Courts' sentences and the Division's action on the license, but the separation of the two functions would be better defined and understood.

## THIS CASE

The issues presented as a result of the petition in this case were founded on the fact that the forms furnished by the Division pursuant to subsection (e) of § 31–5–233, supra, required more than specified in such subsection, with a result that Respondent refused to execute and return them to the Division.

The statutory direction with reference to the forms to be furnished by the Division is that they be for issuance of the temporary license, including notification of the person's right to a hearing by the Division pursuant to § 31–7–127(e), supra. The furnished forms contained these two things, but they contained more. They were titled "Notice of Suspension/Revocation," and they required the signature of the judge or clerk of court. They recited in part:

"You are hereby notified that your conviction of the following which has been checked requires the IMMEDIATE SURRENDER of your license and the SUSPENSION/REVOCATION OF YOUR DRIVING PRIVILEGE in the State of Wyoming.

"☐ 1st conviction of DWUI, W.S. 31–5–233, driving privileges suspended from the date of conviction for 3 months. This suspension is stayed if the Temporary License is issued below.

"☐ 2nd conviction of DWUI, W.S. 31–5–233, driving privileges suspended from date of conviction for one (1) year.

"☐ 3rd or subsequent conviction of DWUI, W.S. 31–5–233, driving privileges revoked from the date of conviction, and may not apply for a new license for a period of five (5) years after revocation.

"☐ DWUI causing serious bodily injury, W.S. 31–5–233(g), driving privileges revoked from the date of conviction for 2 years, pursuant to W.S. 31–5–233(g)(iii).

"In addition to the Suspension/Revocation indicated above, you are required to have on file with the Department of Revenue and Taxation, Future Proof of Financial Responsibility. Said proof must be maintained for three (3) years from the date of conviction."

After receiving the above notice *from the court,* with one of the first two boxes checked, the chagrin of the defendant and his question as to the ability of the Division to "overrule" the court can be understood when he receives the communication from the Division that the court's notice is "incorrect" and "is hereby amended" to show additional prior convictions. The court's reluctance to execute and return such forms to the Division is also understandable.

## ISSUES

The following issues were presented directly or indirectly in the petition, the answer and the briefs of the parties:

1. Do the statutes contemplate return by the Courts of copies of the forms furnished by the Division?

2. Are drivers' licenses suspended at the time of conviction "by operation of law?"

3. Can the Division suspend or revoke drivers' licenses on the basis of prior convictions other than those considered by the Courts in imposing sentence?

4. Under the present wording of the statute, can convictions in other states or in municipal courts be con-

sidered in revocation or suspension of drivers' licenses?

5. Were the forms furnished by the Division proper ones?

6. Is the return of the forms by the Courts a ministerial act?

7. Is Article 2, Section 1 of the Wyoming Constitution violated by legislative direction to the Courts to collect drivers' licenses and to execute and return the forms furnished by the Division?

## FIRST ISSUE

■ Respondent argues that although § 31–5–233(e), supra, directs the Division to furnish forms to the Courts for issuance of temporary licenses and for notification of the right to a hearing by the Division, neither it nor any other statute directs the Courts to return copies of the forms to the Division. Obviously, this is true, but, as already noted, the legislative intent for the Division to do the actual suspension or revocation of drivers' licenses is manifested when the several statutes having to do with revocation and suspension of such licenses are read in pari materia. The fact of conviction, etc., may be made known to the Division in the historic and customary fashion. Subsection (d) of § 31–7–127, supra, requires the suspension of the driver's license by the Division to begin on the expiration date of the temporary license issued by the court.[6] The Division must be advised of the expiration date of the temporary license and it must have a record that the defendant had notice of his right to a hearing within the Division. A copy of the form will provide this information.

Accordingly, the legislature did contemplate execution and return by the Courts of copies of the forms furnished by the Division. The propriety of the forms and the

constitutionality of that contemplated by the legislature will be discussed infra in the fifth and seventh issues.

## SECOND ISSUE

■ That already said reflects the fact that the drivers' licenses are not suspended at the time of conviction "by operation of law." The licenses are suspended or revoked by the Division. The principal objective of involving the Courts in the suspension and revocation procedure was to obtain immediate surrender of the license, but the Division was intended to perform the function of suspension or revocation.

## THIRD ISSUE

■ Aside from the constraints on both the Courts and the Division discussed in the Fourth Issue, infra, and under the present status of the law, the Division can suspend or revoke drivers' licenses on the basis of prior convictions other than those considered by the Courts in imposing sentences. As noted supra, the Courts can only consider those prior convictions referred to in the complaint or information upon which the defendant is charged. All of the prior convictions "under this act" may not be there set forth. Historically, the Division has not been subject to the same restrictions as have the Courts with reference to enhanced penalties under a habitual criminal act. And we need not, and will not, address the propriety of the Division's actions in this respect. At the present time, the Division will probably be considering prior convictions not being considered by the Courts.

## FOURTH ISSUE

We do hold that neither the Division nor the Courts can consider prior convictions

---

**6.** This evidences another inconsistency in the legislation. The temporary license is for a 30-day period. The suspension or revocation begins at the end of that period in accordance with § 31–7–127(d), supra, but subsection (e) of that section provides in part:

"(e) After suspension or revocation under subsection (d) of this section, the licensee shall have twenty (20) days from date of conviction within which to request the [a] hearing. * * * "

He cannot request a hearing both (1) within twenty days of conviction, and (2) after suspension or revocation which occurs thirty days after conviction.

under the laws of other states or under municipal ordinances of this state in connection with sentences or with suspension or revocation of drivers' licenses. Again, as already noted, the statute is plain and unambiguous and therefore not subject to interpretation in providing that sentences shall be enhanced only by convictions "under this section," (see fn. 3 and § 31-5-233(e), supra) and in providing that suspensions and revocations of drivers' licenses shall be for convictions "under this section" § 31-5-233(e), supra, and "upon conviction under W.S. 31-5-233" § 31-7-127(d), supra. Until the legislature sees fit to change the express wording of these statutes, only convictions under the indicated sections can be counted as prior convictions for enhancement of sentences or for suspension and revocation of drivers' licenses.

## FIFTH ISSUE

We have already set forth wherein the forms furnished by the Division went beyond that specified in the statute. The forms were obviously designed by the Division with the belief that the suspensions of drivers' licenses were to be done by the Courts upon conviction of the defendants. If this were so, the suspension would be a part of the sentence and not subject to review or change by the Division. We find that it was not the legislative intent to remove the suspension or revocation procedure from the Division and place it with the Courts. The Division still has its historic position in this respect, with its determinations and actions being subject only to judicial review in the same fashion as are those of any other administrative agency. Thus, the forms were predicated on an erroneous basis and are improper.

## SIXTH ISSUE

Respondent argues that the execution and return of the forms were more than ministerial acts wherefore mandamus would not lie. *LeBeau v. State,* Wyo., 377 P.2d 302 (1963); and *State ex rel. Badley v. City of Sheridan,* Wyo., 513 P.2d 647 (1973). He contends that discretion is involved in determining into which of the several categories the defendant is placed as a result of his conviction. We do not agree. The discretion was exercised before there was a need to give any attention to the forms. Once sentence was imposed, the forms could be filled out from the court record. In fact, they could be prepared and executed by the clerk of the court. The required action is ministerial and mandamus will lie if the situation is one in which the issuance of the writ would be proper.

## SEVENTH ISSUE

The Courts are anxious to cooperate with anyone or any program with an objective to remove the drunk or drugged drivers from the highways—whether or not the cooperation is mandated by law. However, the judges of the Courts take an oath to abide by the constitution. Art. 2, § 1 of the Wyoming Constitution (fn. 2, supra) does not leave room for exercise by one branch of the government of the powers of another even with the permission or direction of the other branch. It directs that such exercise *shall* not occur.

The Courts are not constitutional courts as are the district courts and this court. The legislature is constitutionally authorized to establish courts (other than the supreme court and district courts). It can create them, designate the extent of their jurisdiction, and abolish them. It did create the Courts (JP and county) and designate their jurisdiction. It can abolish them.

Petitioner argues that the legislature can direct the Courts to do various acts even if such properly belong to the executive branch. Once created, the Courts became part of the judicial branch and are subject to the restrictions contained in Art. 2, § 1, Wyoming Constitution (fn. 2, supra). The legislature cannot legally direct the Courts to patrol the highways and enforce the motor vehicle code. It cannot direct them to perform the duties of the secretary of state or to do any other executive function. The Courts become involved in executive or legislative functions only by virtue of judicial review.

Only the legislature can make certain acts a crime and establish the penalties for violation of them. It has defined DWUI as a crime and set the penalty for imposition by the Courts. It could include suspension of drivers' licenses as part of such penalty. As noted supra, the intent to do so is not manifested, and the power to suspend or revoke the privilege of driving upon the highways of the state has been placed in the Division where an opportunity for a hearing is provided and where discretion is placed to allow exercise of the privilege only under certain conditions.

The collection of a driver's license from a convicted person and the issuance of a driver's license—permanent or temporary—are functions of the executive branch of the government. These functions cannot constitutionally be performed by the judicial branch. The surrender of a driver's license as a part of the penalty defined by the legislature can be the function of the court imposing sentence, but the legislature has not seen fit to include suspension or revocation of drivers' licenses as part of the criminal penalty for DWUI. Should it do so, the penalty could not be reviewed or changed or approved by the executive branch.

The provisions in § 31–5–233(e), supra, for collection of a driver's license by the court and for the issuance of a temporary driver's license by the court are unconstitutional in that they violate Art. 2, § 1 of the Wyoming Constitution by directing the exercise of powers properly belonging to the executive branch of the government to the judicial branch.

The dispositions as a result of judicial action in cases before the Courts are generally a matter of public record[7] and the Courts shall continue to advise the arresting officer, county attorneys, etc., including the Division, of such disposition.

In summary, the forms furnished by the Division were not those directed to be furnished by the statute. They are misleading and reflect involvement by the Courts in suspension or revocation of drivers' licenses even more than legislated. They need not be executed, with copies distributed as contemplated by the Division. Unless and until changed by the legislature, only prior convictions under § 31–5–233, supra, may be considered by the Courts in imposing sentences and by the Division in suspending and revoking drivers' licenses. The statutory direction to the Courts to collect drivers' licenses and execute and return the Division furnished forms is unconstitutional. The Courts will furnish dispositions on all DWUI cases to the Division and any other interested parties.

### CONCLUSION

For the foregoing reasons, the Alternate Writ of Mandamus will be quashed and the Petition for a Peremptory Writ of Mandamus will be denied.

### ORDER QUASHING ALTERNATE WRIT OF MANDAMUS AND DENYING THE MOTION FOR PEREMPTORY WRIT OF MANDAMUS

An Alternate Writ of Mandamus having issued out of this Court directing Respondent to complete and furnish to the Motor Vehicle Division of the Department of Revenue and Taxation certain forms furnished by such Division relative to court action and other matters concerning cases before the Respondent court involving the charge of Driving While Under the Influence of Intoxicants or Drugs or to show cause for not doing so; and briefs on the matter having been furnished by both parties, and the Respondent having shown cause for not completing and furnishing such forms; it is

ORDERED that the Alternate Writ of Mandamus heretofore issued out of this Court in this matter be, and the same hereby is, quashed for the reasons contained in the opinion of this Court issued contemporaneously with this order, and for the same reasons, it is

FURTHER ORDERED that Petitioner's request for a Peremptory Writ of Mandamus be, and the same hereby is, denied.

7. Exceptions exist for juvenile matters, adoption proceedings and similar matters.