The STATE of Wyoming ex rel. DEPART-
MENT OF REVENUE AND TAXA-
TION, MOTOR VEHICLE DIVISION,
Appellant (Respondent),

v.

Bruna Granaas McNEESE,
Appellee (Petitioner).

No. 85–263.

Supreme Court of Wyoming.

April 24, 1986.

A.G. McClintock, Atty. Gen., Michael R. O'Donnell, Asst. Atty. Gen., Cheyenne, for appellant.

David A. Hampton, Rock Springs, for appellee.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

BROWN, Justice.

Appellee Bruna Grannaas McNeese was convicted in municipal court of violating Rock Springs Municipal Ordinance 5–201(a). After receiving a record of this conviction, the Motor Vehicle Division of the Department of Revenue and Taxation

(Division) proposed to revoke appellee's driver's license. A hearing on the proposed revocation was held in April 1985, which resulted in the decision to revoke the license.

Appellee petitioned the district court for review of this decision. The district court concluded that the Division had no authority to revoke appellee's driver's license based on her conviction under the municipal ordinance, and accordingly reversed the Division's order. From this order the Division has appealed.

We will affirm the order of the district court.

The parties state the issue as:

"I. Did the district court err in concluding, as a matter of law, that *State ex rel. Motor Vehicle Division v. Holtz*, 674 P.2d 732 (Wyo.1983) is controlling and the Motor Vehicle Division does not have the authority to revoke a driver's license based upon a municipal conviction of hit-and-run?"

The Division revoked appellee's license pursuant to § 31–7–126(a)(iii), W.S.1977, (November 1984 Replacement) which stated: [1]

"(a) The division shall revoke the license or privilege of any person to operate a motor vehicle in the state, upon receipt of a record of conviction of such person of any of the following violations:

" * * * * * *

"(iii) Failure to stop and render aid when involved in a motor vehicle accident resulting in personal injury or death, as required by W.S. 31–5–1101."

Section 31–5–1101(a), W.S.1977, (November 1984 Replacement) provides:

"(a) The driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of W.S. 31–5–1103. * * * *"

This subsection was adopted by reference as Rock Springs Municipal Ordinance 5–201(a), under which appellee was convicted. Subsection (b) of § 31–5–1101 which provides for a penalty of up to $5,000 or one year imprisonment, or both, was not adopted; the penalty provided by the municipal ordinance is a fine of up to $750. We must answer the question whether the phrase "as required by W.S. 31–5–1101" means that the conviction must be under § 31–5–1101, or under the ordinance which adopts § 31–5–1101 by reference.

In a case similar to the present one, *State ex rel. Motor Vehicle Division v. Holtz*, Wyo., 674 P.2d 732 (1983), we dealt with license revocation in the context of DWUI convictions. The statute, as it then existed, provided in part:

"Every person convicted under this section shall * * * have his driver's license suspended at the time of conviction by the court. * * * *" § 31–5–233(e), W.S. 1977, 1983 Cum.Supp.

This court concluded that the language was plain and unambiguous. We held that convictions under other state's DWUI statutes, or convictions under municipal ordinances could not be the basis for suspending a license since such convictions were not "under this section." *State ex rel. Motor Vehicle Division v. Holtz*, supra, at 742. In reaching the holding we stated:

" * * * Convictions in municipal courts are for violations of ordinances and not state statutes. This is true even if a state statute is copied verbatim in the ordinance or even if it is adopted as the ordinance by reference to it." Id., at 737.

From our holding in *Holtz*, appellee successfully argued in the district court that under § 31–7–126(a)(iii), the Division could only revoke her license if she had been convicted of violating the state statute. Appellee maintains that the decision in Holtz controls, and that § 31–7–126 clearly

---

1. This section has been consolidated with other statutes providing for mandatory license revocation and now appears in § 31–7–127(a)(iv), W.S. 1977, 1985 Cum.Supp.

requires a conviction under § 31–5–1101. Appellant argues that the statute clearly does not require a conviction under § 31–5–1101.

We do not find the pertinent language as clear as either party claims. Unlike the phrase "under this section", the phrase "as required by W.S. 31–5–1101" is susceptible to at least two meanings. First is that which appellee claims. A second meaning is that the driver need only be convicted of failing to stop and render aid under any state statute or ordinance which requires the driver to take the same action as required by § 31–5–1101.

"When a word or phrase in a statute is susceptible of more than one meaning, it must be considered ambiguous." *State Board of Equalization v. Tenneco Oil Company*, Wyo., 694 P.2d 97, 99 (1985). In construing ambiguous statutes the primary consideration is to reach the legislative intent. Recognizing this goal, courts presume legislative enactments to be reasonable and logical, and further assume that it is the intent of the legislature to enact only that which is just. *Mauler v. Titus*, Wyo., 697 P.2d 303 (1985); *McGuire v. McGuire*, Wyo., 608 P.2d 1278 (1980). Finally we note that it is as important to recognize what is not in the statute as well as what is. *Matter of Adoption of Voss*, Wyo., 550 P.2d 481 (1976). Because the statute is susceptible of more than one meaning we must construe it, searching for the legislature's intent.

In arguing that municipal convictions under ordinances adopting the statutory language of § 31–5–1101(a) should suffice, appellant relies heavily on the fact that § 31–5–1101 is a part of the Uniform Act Regulating Traffic on Highways. § 31–5–101, et. seq. According to appellant, because municipalities may adopt parts of the Uniform Act, but may not place themselves in conflict with the same, violations of ordinances adopting statutes by reference within the Act must trigger the same penalty the statute triggers. Any other result violates the comprehensive scheme contemplated by the Uniform Act.

We are not persuaded by appellant's argument. Ordinances prohibiting the same conduct as a statute may provide different penalties without being in conflict with the statute. 1 Antieau, Municipal Corporation Law § 5.35, p. 5–103 (1986). Here the legislature could not have intended that the same penalty, in terms of fine and imprisonment, be imposed for convictions under § 31–5–1101 and municipal ordinances adopting that statute, since it provides for punishment in excess of the jurisdiction of municipal courts. See § 5–6–201, W.S.1977, 1985 Cum.Supp. Nor do we think that the legislature intended that a person's driver's license would be revoked when he is convicted of failing to stop and render aid under a municipal ordinance, even though that is the result of a conviction under § 31–5–1101.

It is significant that § 31–7–126(a)(ii) provided that the division shall revoke the license upon receipt of a record of the driver's "third conviction of reckless driving in violation of any state statutes *or local ordinances.*" (Emphasis added). In subsection (a)(iii), however, no mention is made of failing to render aid as required by local ordinances, and only the state statute is referred to.

Likewise, after the *Holtz* decision, the statute dealing with suspensions for DWUI convictions was amended to include convictions under the statute "or other law prohibiting driving while under the influence." § 31–7–127(d), W.S.1977 (November 1984 Replacement). These references to local ordinances or other laws, as well as a reference to a "conviction under W.S. 6–2–106, or a similar statute in another jurisdiction", all appear in the most recent statute concerning mandatory revocation of licenses, § 31–7–127, W.S.1977, 1985 Cum. Supp., which consolidates older versions of the revocation statutes. Even after this consolidation, no reference to statutes of other states or ordinances appears in the subsection revoking licenses for failing to stop and render aid, as required by § 31–5–1101. The absence of such reference, included in three other subsections, leads us to conclude that the legislature intended

"as required by § 31–5–1101" to require a conviction under § 31–5–1101 itself.

In reaching this conclusion we are also persuaded by the different penalties imposed by the statute and the ordinance. Section 31–5–1101(b) allows for both one year imprisonment, or a $5,000 fine, or both, while the ordinance provides for a maximum fine of $750. Arguably, because the penalties vary so drastically, a person charged under the state statute realizes the seriousness of the charge while a person charged under the ordinance might well believe he is faced with nothing more serious than an ordinary traffic violation.

The different penalties also result in different procedures. In the present case appellee appeared before a municipal court judge, who convicted her of violating the ordinance and imposed the $100 fine. Appellee was not given a jury trial although she contended at the subsequent revocation hearing that she requested one. Although the record from appellee's conviction is not part of the record in this proceeding, we think it quite possible that such request was denied under Rule 5(d), Wyoming Rules of Criminal Procedure for Justices of the Peace Courts and Municipal Courts, (W.R.Cr.P.J.C.) 1985 Cum.Supp.[2]. Nor did appellee have the right to counsel, stated in Rule 6(a), W.R.Cr.P.J.C. In this regard, we are confident in assuming that many people charged under an ordinance providing for a maximum penalty of $750 might not retain an attorney, while most would obtain counsel when the possible penalty is one year imprisonment and a $5,000 fine.[3] Thus, the rules which govern the municipal court proceedings involving the ordinance here provide minimal safeguards to the person charged. In short, when one is charged with a violation of the ordinance, the matter is not treated by either the state or the accused as seriously as when one is charged with a violation of the statute.

Despite the different safeguards provided, appellant would read § 31–7–126 as requiring revocation of the license for one year, upon conviction under either the statute or ordinance. We believe that construing the statute in this manner would have the effect of reading into the statute words which are not there. More importantly, to construe the statute as appellant wishes would produce a result which we do not believe the legislature could possibly have intended.

We read § 31–7–126(a)(iii) as requiring a conviction under § 31–5–1101. Since a conviction under a municipal ordinance, even one copying the state statute verbatim or adopting the statute as the ordinance, is not a conviction under the statute, the Division had no authority to revoke appellee's license pursuant to § 31–7–126(a)(iii).

The district court was correct in holding that appellee's license could not be revoked for her conviction under the municipal ordinance. The order of the district court is therefore affirmed.

---

**2.** We do not consider the question of whether an automatic revocation of a driver's license is a penalty serious enough to afford a right to jury trial, just as we did not decide the question in *Lapp v. City of Worland,* Wyo., 612 P.2d 868, 874 n. 7 (1980). We note, however, that this question has produced a split in the courts. See e.g., *Baker v. City of Fairbanks,* Alaska, 471 P.2d 386 (1970); *Smith v. State,* 17 Md.App. 217, 301 A.2d 54 (1973). See also, Annot., 16 A.L.R.3d 1373 (1967).

**3.** The record does not indicate whether appellee was represented by counsel before the municipal court.