Judy Lynn **GERSTELL**, Petitioner,

v.

**STATE of Wyoming, ex rel., DEPARTMENT OF REVENUE AND TAXATION, Respondent.**

No. 87–294.

Supreme Court of Wyoming.

Feb. 24, 1989.

Robert J. Reese, Reese & Mathey, Green River, for petitioner.

Joseph B. Meyer, Atty. Gen., Peter J. Mulvaney, Deputy Atty. Gen., Mark Quiner, Asst. Atty. Gen., for respondent.

Before CARDINE, C.J., THOMAS, URBIGKIT and MACY, JJ., and BROWN, J., Retired.

THOMAS, Justice.

The question raised by the appellant, Judy Lynn Gerstell (Gerstell), is whether the procedure invoked for suspension of a driver's license under the provisions of §§ 31–6–101 to –106, W.S.1977 (May 1987 Repl.), relating to implied consent to chemical testing, is invalid and void because it contravenes the provisions found in the Wyoming Administrative Procedure Act (§§ 16–3–101 to –115, W.S.1977 (Oct. 1982 Repl.)), particularly § 16–3–113(c). We hold that the proceedings which resulted in the suspension of Gerstell's driver's license were not invalid or void for lack of jurisdiction or for failure to comply with the provisions of § 16–3–113(c). We affirm the or-

der of the Department of Revenue and Taxation (Department) suspending Gerstell's driver's license.

In her Brief of Appellant, Gerstell says that the issue is:

·"Whether a license suspension can be upheld when the suspension proceedings are conducted in violation of § 16–3–113(c) of the Wyoming Statutes."

The Department says that the issue is:

"Whether the suspension of appellant's driver's license was proper, according to procedure, and mandated by law?"

We are not presented with a dispute as to underlying facts. At about 3:25 A.M. on the morning of June 25, 1987, a peace officer serving in the Green River Police Department arrested Gerstell for a violation of § 31–5–233, W.S.1977 (May 1987 Repl.).[1] The Officer's Signed Statement, made on a form prepared by the Department, includes this statement of facts justifying the initial contact:

"Observed vehicle traveling at high rate of speed westbound upon W. Railroad Ave. Observed that driver while operating vehicle, drifted to the extreme left bound oncoming lane at W. Railroad and N.2nd W. Vehicle also failed to make stop at stop sign located on W. Railroad Ave. and N.4th W."

In completing the form, the officer described the following physical characteristics pertaining to Gerstell:

"Odor of Alcohol    Very Strong

"Speech    slurred slow, hard to understand

"Balance    swayed from side to side, used vehicle for support,

"Signs or Complaints of Injury    None
* * *."

The statement goes on to reflect that she was unable to accomplish an initial field sobriety test and refused to take any others and that Gerstell said "she had been drinking a little." It also is checked to set forth the fact that she did not take a chemi-

1. Section 31–5–233, W.S.1977 (May 1987 Repl.), provides, in pertinent part:

"(a) It is unlawful for any person who is under the influence of intoxicating liquor, to

a degree which renders him incapable of safely driving a motor vehicle, to drive or have actual physical control of any vehicle within this state."

cal test. It was after these procedures that Gerstell was arrested for the violation of § 31-5-233.

It is clear that Gerstell was advised that failure to submit to required chemical tests would result in a suspension of her driver's license. The signed statement was submitted on a form furnished by the Department of Revenue and Taxation. In addition, Gerstell was furnished with a copy of a Refusal which is also a notice of suspension and a temporary driver's license furnished by the Department of Revenue and Taxation. This procedure was accomplished by the peace officer at the time of the arrest.

The pertinent statutes provide as follows:

"§ 31-6-102. Test to determine alcoholic or controlled substance content of blood; suspension of license.

"(a) If arrested for an offense as defined by W.S. 31-5-233:

"(i) Any person who drives or is in an actual physical control of a motor vehicle upon a public street or highway in this state is deemed to have given consent, subject to the provisions of this act, to a chemical test or tests of his blood, breath or urine for the purpose of determining the alcohol or controlled substance content of his blood. The test or tests shall be:

"(A) Incidental to a lawful arrest;

"(B) Given as promptly as possible after the arrest;

"(C) Administered at the direction of a peace officer who has probable cause to believe the person was driving or in actual physical control of a motor vehicle upon a public street or highway in this state while under the influence of alcohol or a controlled substance or under the combined influence of alcohol or any controlled substance to a degree which renders him incapable of safely driving the vehicle. The peace officer who requires a test pursuant to this section may direct that the test shall be of blood, breath or urine. However, if the officer directs that the test be of the person's blood or urine, the person may choose whether the test shall be of blood or urine. The person has this option unless the peace officer has probable cause to believe there is impairment by a controlled substance which is not subject to testing by a blood or breath test in which case a urine test may be required.

"(ii) For tests required under this act, the arrested person shall be advised that:

"(A) His failure to submit to all required chemical tests requested by the peace officer shall result in the suspension for six (6) months of his Wyoming driver's license or his privilege to operate a motor vehicle;

"(B) If a test is taken and the results indicate the person is under the influence of alcohol, he may be subject to criminal penalties and his Wyoming driver's license or his privilege to operate a motor vehicle shall be suspended for ninety (90) days;

"(C) He may go to the nearest hospital or clinic and secure any or all required tests at his own expense or any remaining required tests shall be administered by a person at a place and in a manner prescribed by and at the expense of the agency employing the peace officer.

"(b) Results of tests obtained at the arrested person's expense shall be made available to the arresting officer and the arrested person. Disclosure of the test results by the person administering the test is not a violation of the doctor-patient relationship.

\*     \*     \*     \*     \*     \*

"(d) If a person under arrest refuses upon the request of a peace officer to submit to a chemical text designated by the agency employing the peace officer as provided in subsection (a) of this section, none shall be given. The peace officer shall submit his signed statement to the department. Upon receipt of the statement the department shall suspend the person's Wyoming driver's license or his privilege to operate a motor vehicle in this state for six (6) months subject to review as provided in this act. The statement submitted by the officer shall contain:

"(i) His probable cause to believe the arrested person was driving or in actual physical control of a motor vehicle:

"(A) On a public street or highway in this state;

"(B) While under the influence of alcohol or a controlled substance to a degree which rendered him incapable of safely driving the vehicle; and

"(ii) That the person refused to submit to a test upon the request of the peace officer.

\* \* \* \* \* \*

"(f) In addition the signed statement submitted under subsection (d) or (e) of this section, the peace officer shall issue the person a temporary license similar to but in lieu of the license authorized under W.S. 31-7-138. This temporary license shall be valid for thirty (30) days, shall not be renewed, shall contain a notice that the person has twenty (20) days from the date of issuance within which to request a hearing from the department and that failure to timely request a hearing will result in the suspension automatically commencing upon expiration of the temporary license or upon expiration of any existing suspension or revocation if the person's license or privilege is suspended or revoked at the time the temporary license is issued. W.S. 31-7-138(d) and (e) apply to a license under this section. For purposes of this section, the peace officer acts as an agent for the department when providing notice of the suspension and notice of the opportunity for a hearing. W.S. 31-7-137 applies to a notice under this act. Failure to demand a hearing within the twenty (20) day period is a waiver of the right of hearing, and the suspension shall commence upon expiration of the temporary license or upon expiration of any existing suspension or revocation if the person's license or privilege is suspended or revoked at the time the temporary license is issued. If a timely demand for hearing is made, the department shall forward the demand to the independent hearing examiner who shall schedule a hearing within forty-five (45) days after receipt of the request and provide the arrested person at least ten (10) days notice of the hearing. The hearing shall be conducted by the hearing examiner. If the hearing examiner fails to schedule the hearing within forty-five (45) days of the request, other than at the request of the licensee, the licensee, as his sole remedy, shall be given credit against any action upheld at the hearing for the time between the expiration of the forty-five (45) day period and the date the hearing was first scheduled.

"(g) For the purposes of this section, the signed statement submitted by the peace officer shall be deemed a sworn statement and shall be subject to penalties for perjury.

"§ 31-6-103 Application for hearing; stay of suspension of license; scope of hearing.

"(a) A timely request for a hearing shall stay the suspension until the order following the hearing is entered and all appellate review of the matter is completed, provided the stay of suspension is effective only so long as there is no suspension for a similar violation during the hearing and appeal period.

"(b) The scope of a hearing for the purposes of this act shall cover the issues of whether a peace officer had probable cause to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon a public street or highway in this state while under the influence of alcohol or a controlled substance to a degree which rendered him incapable of safely driving the vehicle, whether the person was placed under arrest, whether he refused to submit to a test upon request of the peace officer or if he submitted to a test whether the test results indicated there was at least ten one-hundredths of one percent (0.10%) by weight of alcohol in the person's blood, and whether, except for the persons described in this act who are incapable of refusing, he had been advised that his Wyoming driver's license or privilege to operate a motor vehicle shall be suspended for six (6) months if he refused to submit to a test and suspended for ninety (90) days and subject him to criminal penalties if he submitted to the test and the results indicate the person is under the influence of alcohol. At the conclusion of the hearing, the hearing examiner shall order that the suspension either be rescind-

ed or sustained. If the person submitted to a chemical test, the hearing examiner has the same authority to modify a license suspension under this act as he does under W.S. 31–7–105.

"(c) Pre-hearing discovery, available to any interested party is limited to access to the notice of suspension, signed statement and any accompanying documentation submitted by the arresting officer. Other types of discovery available under other law are not available in a hearing under this section."

Gerstell does not urge that the statutory procedure set forth above was not followed by the officer.

On July 1, 1987, the Department mailed to Gerstell a "Notification of Receipt of Implied Consent" in which the Department stated that it had received advice as to her refusal to submit to a chemical test and that her driver's license would be suspended from July 25, 1987 to January 20, 1988. The notice also stated that Gerstell's written request for a hearing must be received within twenty days of June 25, 1987. Apparently, this crossed in the mail with a request for hearing sent by Gerstell's attorney on June 30 in which a request was made for " * * * all documents pertaining to this file when you receive them." On July 2, 1987, the Department sent a second letter informing Gerstell that her request for a hearing had been received and that her temporary driving privileges would be extended until the hearing was held. The hearing initially was scheduled for August 5, 1987 but, because the Department failed to furnish the requested documents, it was continued until September 2, 1987. While Gerstell complains in her statement of the case about the failure of the Department to furnish the documents until August 21, 1987, we do not perceive that any claim of error is premised upon this failure, and no prejudice can be discerned relating to it.

The Independent Hearing Examiner, after the hearing, found that the peace officer had probable cause to believe that Gerstell was driving on the public streets while under the influence of alcohol; that Gerstell had been arrested for driving under the influence of alcohol; that she had been informed, in accordance with law, of her rights and obligations under the Wyoming statutes; and that she had refused to comply and submit to a chemical test. He upheld the suspension of Gerstell's driver's license pursuant to the provisions of § 31–6–102.

Gerstell contends that, because it failed to comply with the mandate of § 16–3–113(c), the Department lacked jurisdiction over the license suspension proceeding until it had done so. Her logic leads her to the conclusion that, because the Department of Revenue did not have jurisdiction, the decision of the hearing examiner must be held to be void and of no effect. The particular defect she points to is that the Department suspended her driver's license before giving her notice by mail of facts or conduct which would warrant the intended action. Her position depends upon the premise that the suspension proceeding was initiated when the peace officer furnished her with the Notice of Suspension and Temporary Wyoming Driver's License. She says that, the proceeding having been initiated in that way, the Department obviously failed to initiate it by giving notice by mail.

The statute upon which Gerstell depends provides in pertinent part:

"(c) No revocation, suspension, annulment or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gave notice by mail to the licensee of facts or conduct which warrant the intended action, and the licensee was given an opportunity to show compliance with all lawful requirements for the retention of the license. If the agency finds that public health, safety or welfare imperatively requires emergency action, and incorporates a finding to that effect in its order, summary suspension of a license may be ordered pending proceedings for revocation or other action. * * *" Section 16–3–113(c).

The Department's argument is that the proceedings in this instance were properly initiated, pursued, and completed in accord-

ance with law. The Department urges that Gerstell's argument that jurisdiction is lacking because of her claimed procedural defect is without merit. Pointing to the "Notification of Receipt of Implied Consent" which was mailed to Gerstell just six days after arrest, the Department argues that Gerstell had proper notice and that it had complied with the appropriate statutory proceedings.

Buttressing her argument, Gerstell points to the proposition that the Department of Revenue and Taxation, as is true of other state administrative agencies, has no authority or power other than that specifically conferred upon it by statute. She cites *Matter of Mountain States Tel. & Tel.*, 745 P.2d 563 (Wyo.1987), and *Tri-County Electric Association, Inc. v. City of Gillette*, 525 P.2d 3 (Wyo.1974). She contends that the rule is that the authority of the Department must be narrowly construed with any reasonable doubt as to the actual extent of that authority being resolved against the agency. *Matter of Mountain States; Public Service Commission v. Formal Complaint of WWZ Co.*, 641 P.2d 183 (Wyo.1982); *TriCounty Electric.* Applying the rule of strict construction, jurisdiction could be found to be lacking if the Department in fact failed to comply with the statutory requirements, and Gerstell's contention that the findings of the hearing examiner would be null and of no effect would be correct.

It is to be noted that Gerstell does not contend that the Department in any way failed to comply with the provision of § 31–6–102 or § 31–6–103. Instead, it is her position that, because the procedure outlined in those statutes fails to satisfy the requirements of § 16–3–113(c), the Department's procedure is inefficacious. It is noted in passing that the logical effect of Gerstell's argument is that it would be impossible for the Department to suspend a driver's license pursuant to the statutory provisions because the initial notice always would be furnished by the peace officer and never would be mailed.

We know well the rule that in construing statutes an absurd result should be avoid-

ed. There is a presumption that the legislature intends to adopt legislation that is reasonable and logical. *State ex rel. Department of Revenue and Taxation, Motor Vehicle Division v. McNeese*, 718 P.2d 38 (Wyo.1986); *McGuire v. McGuire*, 608 P.2d 1278 (Wyo.1980); *Department of Revenue and Taxation v. Irvine*, 589 P.2d 1295 (Wyo.1979). It is also assumed that the legislature did not intend futile acts. E.g., *Hamlin v. Transcon Lines*, 701 P.2d 1139 (Wyo.1985); *Wetering v. Eisele*, 682 P.2d 1055 (Wyo.1984); *Thompson v. Wyoming In-Stream Flow Committee*, 651 P.2d 778 (Wyo.1982); *Yeik v. Department of Revenue and Taxation*, 595 P.2d 965 (Wyo.1979). Furthermore, statutes that relate to the same subject matter should be harmonized where that is possible. *WYMO Fuels, Inc. v. Edwards*, 723 P.2d 1230 (Wyo.1986); *State ex rel. Motor Vehicle Division v. Holtz*, 674 P.2d 732 (Wyo.1983). In this instance, harmonization can be accomplished by applying the rule that a specific statute will govern over a general statute. E.g., *City of Rock Springs v. Police Protection Association*, 610 P.2d 975 (Wyo.1980); *White v. Board of Land Commissioners*, 595 P.2d 76 (Wyo.1979); *Irvine; Department of Revenue, Motor Vehicle Division v. Shipley*, 579 P.2d 415 (Wyo.1978).

We have noted that Gerstell does not contest the fact that the Department indeed did mail a Notification of Receipt of Implied Consent six days after her arrest. Section 31–6–102(f) provides only that "if a timely demand for hearing is made, the department shall forward the demand to the independent hearing examiner who shall schedule a hearing within forty-five (45) days after receipt of the request and provide the arrested person at least ten (10) days notice of the hearing." This provision was complied with. The statute manifests a legislative intent that the automatic suspension is provisional only, and that the due process rights of the holder of a driver's license will be protected by the procedure set forth in the statute. Section 31–6–103 provides that the timely request for hearing stays the suspension until the en-

try of the order following the hearing and the completion of all appellate review.

Giving these statutes a reasonable and logical construction, there is no conclusion other than a holding that, by forwarding the request for hearing to the independent hearing examiner, the Department of Revenue then institutes the proceedings for suspension of the license and, in accordance with the Department procedures, notice by mail was furnished to Gerstell of facts or conduct which warranted the intended action prior to the time the case was forwarded to the independent hearing examiner. Gerstell then had every opportunity to show compliance with all lawful requirements for the retention of her license. We note the provision in § 16–3–113(c) of authority to summarily suspend a license if the agency finds that public health safety and welfare require emergency action. In our view, the legislature, by providing for the seizure of the license by the peace officer, has, in effect, usurped the prerogative of the Department to make a finding that emergency action is required. The Department cannot be faulted for adopting appropriate procedures to implement that legislative policy.

The order of the Department of Revenue and Taxation suspending Gerstell's driver's license is affirmed.