2002 WY 169

**Tom PAGEL, as Director of the Wyoming Division of Criminal Investigation, and as Official Custodian of Certain Concealed Firearm Permit Records, Appellant (Petitioner),**

v.

**Ann FRANSCELL, and the Gillette News Record, upon their request for Certain Concealed Firearm Permit Records, Appellees (Respondents).**

**No. 01–201.**

Supreme Court of Wyoming.

Nov. 19, 2002.

Hoke MacMillan, Attorney General; Paul S. Rehurek, Deputy Attorney General; Hugh Kenny, Senior Assistant Attorney General; Bryan A. Skoric, Senior Assistant Attorney General; and T. Alan Elrod, Assistant Attorney General, Representing Appellant. Argument by Messrs. Skoric and Elrod.

Michael J. Krampner of Krampner, Fuller, and Hambrick, Casper, WY, Representing Appellees. Argument by Mr. Krampner.

Before HILL, C.J., and GOLDEN, LEHMAN,* KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶ 1] This is an appeal from an order of the district court requiring appellant Tom Pagel, as director of appellant Wyoming Division of Criminal Investigation (collectively DCI), to provide a list of all people living within Campbell County possessing a permit or license to carry a concealed weapon under Wyoming law to appellee Ann Franscell, as editor-in-chief of appellee Gillette News Record (collectively Newspaper). We reverse and remand.

* Chief Justice at time of oral argument.

## ISSUES

[¶ 2] DCI sets forth the following issues on appeal:

I. Did the district court err as a matter of law in denying appellant's Rule 59 motion, where the intervening change in the controlling law, with its clear retroactivity clause, necessitated either a new trial or an amendment of the district court's order of March 21, 2001?

II. Did the district court err as a matter of law in holding that the names of concealed firearm permit holders were subject to release under the concealed firearm permit statute, Wyo. Stat. § 6–8–104?

III. Did the district court err as a matter of law by failing to apply the Public Records Act in determining whether appellant was entitled to refuse to disclose the records that appellees requested?

IV. Did the district court err as a matter of law by ordering appellant to disclose the names of concealed firearm permit holders, where those orders mandate appellant to violate both state and federal law?

Newspaper phrases the issues on appeal as:

I. Did the district court err in deciding that the Wyoming Public Records Act required access to the list of persons to whom concealed weapons permits had been issued, by applying the law which was in effect both on the day the records were requested and on the day the case was decided?

II. After a case between two parties has been decided, can the Legislature alter the decision in that case by changing the law "retroactively," consistent with the "separation of powers" doctrine and W.S. § 8–1–107, when the words of the statutory amendment itself require a different result?

## FACTS

[¶ 3] On September 19, 2000, Newspaper requested that DCI provide a list of all people living within Campbell County who had a valid permit or license to carry a concealed weapon under Wyoming state law. On October 3, 2000, DCI denied Newspaper's request

indicating the language within Wyo. Stat. Ann. § 6–8–104(n) (Lexis 1999) allowed release of the requested information solely to Wyoming law enforcement agencies and, notwithstanding that language, release of the information would do substantial injury to the public interest. DCI also indicated release of the information would be contrary to the very purpose of the concealed firearm statute since it would directly subvert an individual's right to conceal from the public at large whether that individual was armed.

[¶ 4] On the same date of DCI's denial, DCI filed an action in the district court pursuant to Wyo. Stat. Ann. § 16–4–203(g) (Lexis 1999), which allows a custodian to petition the court for an order restricting disclosure of a requested record, even if the record may be otherwise available to the public. DCI asserted the requested records were not public records but, even in the event they were considered public records, release would do substantial injury to the public interest. Immediately after a February 1, 2001 hearing, the district court orally ordered DCI to release the names of concealed permit holders in Campbell County to Newspaper but offered to stay the enforcement pending appeal since the court recognized the potential for irreparable harm. Shortly after the hearing, Newspaper submitted a proposed order to DCI for approval. DCI refused to approve this proposed order and requested that a transcript of the hearing be prepared for review. Upon review of the transcript, DCI objected to the proposed order pursuant to W.R.C.P. 58 on February 21, 2001.

[¶ 5] During this time frame, § 6–8–104 was amended to mandate that no lists or other records maintained by DCI or other law enforcement agencies, which identified an individual who concealed a firearm through permit, were to be considered a public record. This amendment also specified that it was to have retroactive effect concerning all records regarding the application and issuance of concealed firearm permits and became effective on February 20, 2001. Wyo. Stat. Ann. § 6–8–104 (LexisNexis 2001).

[¶ 6] On March 21, 2001, the district court entered its order in the form presented by Newspaper requiring DCI to disclose the requested information but staying enforcement of the order pending appeal. On April 2, 2001, DCI filed a motion for a new trial or, in the alternative, to alter or amend the district court's previously entered order. On June 15, 2001, the district court held a hearing concerning this motion and requested additional briefing. After considering this additional briefing, the district court entered an order denying DCI's motion. This appeal followed.

## STANDARD OF REVIEW

[¶ 7] A hearing was held with the district court issuing specific findings of fact and conclusions of law. In its recently published case of *Hutchings v. Krachun*, 2002 WY 98, ¶ 10, 49 P.3d 176, ¶ 10 (Wyo.2002), this court reiterated our standard of review:

> The purpose of specific findings of fact is to inform the appellate court of the underlying facts supporting the trial court's conclusions of law and disposition of the issues. *Hopper v. All Pet Animal Clinic, Inc.*, 861 P.2d 531, 538 (Wyo.1993). While the findings of fact made by a trial court are presumptively correct, we examine all of the properly admissible evidence in the record. Because this court does not weigh the evidence de novo, findings may not be set aside because we would have reached a different result. Rather, the appellant has the burden of persuading the appellate court that the finding is erroneous. *Id.* See also *Maycock v. Maycock*, 2001 WY 103, ¶ 11, 33 P.3d 1114, ¶ 11 (Wyo.2001). Findings of fact are not set aside unless inconsistent with the evidence, clearly erroneous, or contrary to the great weight of the evidence. The definitive test of when a finding of fact is clearly erroneous is when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. A determination that a finding is against the great weight of the evidence means that a finding will be set aside even if supported by substantial evidence. *Id.* See also *Mathis v. Wendling*, 962 P.2d 160, 163 (Wyo.1998). **Conclusions of law made by the trial court are not binding on this**

*court and are reviewed de novo. May-cock,* ¶ 12.

(Emphasis added.)

### DISCUSSION

[¶ 8] In its second issue raised on appeal, DCI asserts that the district court erred as a matter of law by failing to correctly interpret the Public Records Act (Wyo. Stat. Ann. § 16–4–201 et seq.) in conjunction with Wyo. Stat. Ann. § 6–8–104 in determining that the records requested by Newspaper were public records. Specifically, DCI contends that the correct interpretation of Wyoming law is that these records are not public records and public inspection is thereby prohibited.

 [¶ 9] In the case of *Wyoming Cmty. College Comm'n v. Casper Cmty. College Dist.,* 2001 WY 86, ¶¶ 16–18, 31 P.3d 1242, ¶¶ 16–18 (Wyo.2001), we set forth:

> In interpreting statutes, our primary consideration is to determine the legislature's intent. *Fontaine v. Board of County Comm'rs,* 4 P.3d 890, 894 (Wyo.2000); *State ex rel. Motor Vehicle Div. v. Holtz,* 674 P.2d 732, 736 (Wyo.1983). Legislative intent must be ascertained initially and primarily from the words used in the statute. *Allied–Signal, Inc. v. State Board of Equalization,* 813 P.2d 214, 219 (Wyo. 1991); *Phillips v. Duro–Last Roofing, Inc.,* 806 P.2d 834, 837 (Wyo.1991). When the words are clear and unambiguous, a court risks an impermissible substitution of its own views, or those of others, for the intent of the legislature if any effort is made to interpret or construe statutes on any basis other than the language invoked by the legislature. *Allied–Signal,* 813 P.2d at 219. Moreover, "[a]ll statutes must be construed *in pari materia;* and in ascertaining the meaning of a given law, all statutes relating to the same subject or hav[ing] the same general purpose must be considered and construed in harmony." *Fontaine,* 4 P.3d at 894 (citing *State ex rel. Motor Vehicle Div. v. Holtz,* 674 P.2d at 735).

Therefore, in performing our review, we look first to the plain and ordinary meaning of the words to determine if the statute is ambiguous. *Olheiser v. State ex rel. Worker's Compensation Div.,* 866 P.2d 768, 770 (Wyo.1994) (citing *Parker Land &* *Cattle Company v. Game & Fish Comm'n,* 845 P.2d 1040, 1042–43 (Wyo.1993)). A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability. *Parker Land & Cattle,* at 1043. Conversely, a statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations. *Id.* We have said that divergent opinions among parties as to the meaning of a statute may be evidence of ambiguity. *Basin Electric Power Co-op. v. State Bd. of Control,* 578 P.2d 557, 561 (Wyo.1978). However, the fact that opinions may differ as to a statute's meaning is not conclusive of ambiguity. Ultimately, whether a statute is ambiguous is a matter of law to be determined by the court. *Allied–Signal,* 813 P.2d at 219.

If we determine that the statute is ambiguous, we resort to general principles of statutory construction to determine the legislature's intent. *Petroleum Inc. v. State ex rel. State Bd. of Equalization,* 983 P.2d 1237, 1240 (Wyo.1999) (citing *Parker Land & Cattle,* 845 P.2d at 1044).

> [I]n ascertaining the legislative intent in enacting a statute ... the court ... must look to the mischief the act was intended to cure, the historical setting surrounding its enactment, the public policy of the state, the conditions of the law and all other prior and contemporaneous facts and circumstances that would enable the court intelligently to determine the intention of the lawmaking body.

*Parker Land & Cattle Co.* at 1044 (quoting *Carter v. Thompson Realty Co.,* 58 Wyo. 279, 131 P.2d 297, 299 (1942)).

We have also recognized that if a statute is deemed to be ambiguous, we must under the guidelines of statutory construction allow specific statutory language to control over prior generally stated statutory language. *In re Pohl,* 980 P.2d 816, 820 (Wyo.1999) and those cases cited therein.

 [¶ 10] Wyo. Stat. Ann. § 16–4–201(a)(v) (Lexis 1999) states:

(v) "Public records" when not otherwise specified includes the original and copies of

any paper, correspondence, form, book, photograph, photostat, film, microfilm, sound recording, map drawing or other document, regardless of physical form or characteristics that have been made by the state of Wyoming and any counties, municipalities and political subdivisions thereof and by any agencies of the state, counties, municipalities and political subdivisions thereof, or received by them in connection with the transaction of public business, *except those privileged or confidential by law* [.]

(Emphasis added.) While Wyo. Stat. Ann. § 6–8–104 (Lexis 1999) does not particularly provide that concealed weapon license records are privileged or confidential by law, that statute does enunciate, in part, the following:

(g) The sheriff of the applicant's county of residence shall submit a written report to the division containing any information that he feels may be pertinent to the issuance of a permit to any applicant. The written report shall state facts known to the sheriff which establish reasonable grounds to believe that the applicant has been or is reasonably likely to be a danger to himself or others, or to the community at large as a result of the applicant's mental or psychological state, as demonstrated by a past pattern or practice of behavior, or participation in incidents involving a controlled substance, alcohol abuse, violence or threats of violence as these incidents relate to criteria listed in this section.... The sheriff of the applicant's county of residence shall notify the chief of police, if any, of the applicant's place of residence of the application for a concealed firearm permit by the applicant. The chief of police shall submit written comments to the division under the guidelines prescribed in this section. Submitted comments shall not be considered a public record.

. . .

(n) The division shall maintain an automated listing of permit holders and pertinent information, and the information shall be available on-line, upon request, at all times to all Wyoming law enforcement agencies.

. . .

(z) By March 1 of each year, the division shall submit a statistical report to the governor and to the joint judiciary interim committee indicating the number of permits issued, revoked, suspended and denied.

[¶ 11] Looking first at § 6–8–104(n), since it is specifically focused upon the dissemination of lists of those holding permits to carry a concealed weapon and other information related to that topic, the very subject matter at issue here, this subsection allows only the dissemination of this information to Wyoming law enforcement agencies. Stated conversely, therefore, this information is precluded from being released to the public, along with even law enforcement agencies outside of Wyoming. Clearly, the language utilized by the legislature in this subsection infers the legislature's intent to limit access to any lists of those holding permits to carry a concealed weapon and other related information.

[¶ 12] Such intent of the legislature is also gleaned from review of § 6–8–104(z). This subsection plainly allows solely the dissemination of very limited types and amounts of statistical information concerning the area of concealed weapons to the governor and the joint judiciary interim committee. Therefore, we must conclude that the legislature intended that specific information in this area other than statistical information regarding the number of permits issued, revoked, suspended, and denied should be protected and kept confidential.

[¶ 13] Finally, review of § 6–8–104(g) explicitly states that written reports made by the local sheriff and chief of police located in the area of residence of a person applying for a concealed weapon permit shall not be considered public records. Newspaper argues that this statement within subsection (g) makes it evident that the legislature intended that only these written reports should not be deemed public records and it follows that any other records in the concealed weapon arena must be considered a public record that may be disclosed. Indeed, the district court explicitly agreed and adopted this argument as a basis for its ultimate ruling. However, we do not agree.

[¶ 14] Our analysis of this subsection leads us to the conclusion that the legislature was merely being exceedingly careful in its decree that any written reports of the applicable law enforcement officials be kept confidential and no other inference may be drawn from this expression. The allowed written reports of these officials and the required background information that must be used as a basis for such comments are exceedingly private. Indeed, as stated within this subsection, these statements must be based upon facts known to the law enforcement officials which establish reasonable grounds to believe that the applicant has been or is reasonably likely to be a danger to himself or others, or to the community at large as a result of the applicant's mental or psychological state, as demonstrated by a past pattern or practice of behavior, or participation in incidents involving a controlled substance, alcohol abuse, violence or threats of violence as these incidents relate to the issuance of a concealed weapon permit.

[¶ 15] Prohibiting dissemination of this information ensures the protection of the applicant, personally, along with his or her reputation within the community and surrounding area of residence. Further, precluding the publication of these statements also provides a protection for the law enforcement officials involved since dissemination may result in retaliatory acts being taken against them for simply supplying their respective honest and verifiable comments concerning the issuance of a concealed weapon permit to any particular applicant. Accordingly, we hold that the language used within subsection (g) by the legislature was meant solely as a carefully thought out prophylactic measure to ensure that the written reports submitted by law enforcement officials called for under the statute be kept confidential.

[¶ 16] Finally, and perhaps most importantly, a simple reading of § 6–8–104 in *pari materia* leaves little question that release of a list of concealed weapon permit holders is contrary to the very nature of the statute. Simply put, what good is a concealed weapon permit if the identity of those who are issued such a permit is of general public knowledge? If we were to hold that lists of those issued concealed weapon permits may be released to the general public, such would defeat the very purpose of the concealed weapons law itself. We cannot infer that the legislature would have purposefully intended such a result.

[¶ 17] We do not find the language used within § 6–8–104 to be ambiguous. Review of the plain and ordinary meaning of the words used therein makes it evident that the legislature only intended to provide limited access to any lists of those holding permits to carry a concealed weapon and other related information and that this information should therefore not be considered a public record which may be released to the general public. Alternatively, even if we were to conclude that this statute might be construed as being ambiguous, application of the proper rules of interpretation lead us to the same conclusion.

[¶ 18] Our determination is based on interpretation of the Public Records Act (Wyo. Stat. Ann. § 16–4–201 et seq.) in conjunction with § 6–8–104 prior to its modification during the 2001 legislative session. The 2001 amendment is telling and is supportive of our ultimate decision; the legislature explicitly includes a statement that the information sought to be disclosed by Newspaper is not to be considered a public record. Specifically, Wyo. Stat. Ann. § 6–8–104(bb) (LexisNexis 2001) provides:

> (bb) No list or other record maintained by the division or other law enforcement agency pursuant to this section, which identifies an individual applicant or permittee shall be considered a public record.

The legislature went further to explicitly provide that the provisions of § 6–8–104(bb) shall apply retroactively to all records regarding the application and issuance of permits regarding concealed firearms under this section. 2001 Wyo. Sess. Laws ch. 63, § 2. Hence, the legislature could not have been any more clear in its desire to limit the access to any lists of those holding permits to carry a concealed weapon and other related information and that such information should not be considered a public record which may be released to the general public.

[¶ 19] Further, while we suppose that one could assert that the amendments to § 6–8–104 clarify that the legislature did not previ-

ously intend to limit access to the records sought by Newspaper, we do not believe that such is the case. To the contrary, the modifications made by the Wyoming legislature in 2001 must be seen as merely a clarification of the legislature's original intentions concerning the limited dissemination of the names and identities of those issued a concealed weapons permit. Thus, these modifications may only be interpreted as an act by the legislature to leave no doubt as to this matter.

[¶ 20] We also note that the legislature further amended § 6–8–104 at subsection (bb) in 2001 to provide that applications, listings, and other records maintained pursuant to this section which identify an individual shall be made available to other law enforcement agencies for purposes of conducting official business. In addition, the legislature decreed that the statistical report provided pursuant to subsection (z) of this section shall be a public record. These additional modifications by the legislature do not lessen our resolve that the legislature, from the inception of enactment of Wyo. Stat. Ann. § 6–8–104, desired to limit access to any lists of those holding permits to carry a concealed weapon and other related information. Rather, these modifications simply clarify the legislature's intention to be cooperative with other law enforcement agencies outside of Wyoming in this area and to provide the general public with at least some information concerning the issuance of concealed weapons permits through the release of general statistics without obliterating the very purpose of the concealed weapons law.

[¶ 21] Finally, as our holding concerning the second issue raised on appeal by DCI is dispositive of this case, we find no necessity to address any other issues brought before this court by the parties upon appeal as they are rendered moot.

## CONCLUSION

[¶ 22] Given those reasons set forth above, we reverse the order entered by the district court requiring DCI to provide a list of all people living within Campbell County, Wyoming who currently had a permit or license to carry a concealed weapon under Wyoming law to Newspaper and further remand this matter back to the district court for entry of an order consistent with this opinion.

GOLDEN, Justice, filed a specially concurring opinion.

GOLDEN, J., specially concurring.

[¶ 23] The Court holds that in three subsections of Wyo. Stat. Ann. § 6–8–104 (Lexis 1999), the concealed weapons law, as well as from "the very purpose" of that law, the Wyoming legislature inferentially designated that the list of citizens given concealed weapon permits is privileged or confidential and, therefore, not a public record which must be disclosed to the public. Further, the Court concludes that the Wyoming legislature's 2001 amendment, Wyo. Stat. Ann. § 6–8–104(bb) (LexisNexis 2001), which expressly declares that the list of concealed weapon permit holders is not a public record, "must be seen as merely a clarification of the legislature's original intentions...." Because I disagree with the Court's analysis, but think that the 2001 amendment applies to Franscell's request, I concur in the result of the Court's opinion.

[¶ 24] In the Wyoming Public Records Act, the legislature has declared that the term "public records" does not include documents made or received by any agencies of the state in connection with the transaction of public business if the documents are made "privileged or confidential by law." Wyo. Stat. Ann. § 16–4–201(a)(v) (Lexis 1999). Over the years this Court has consistently maintained that it liberally construes the Act in favor of disclosure and narrowly construes exceptions. *Houghton v. Franscell,* 870 P.2d 1050, 1052 (Wyo.1994). I am inclined to think that exceptions to disclosure, like exceptions to liability (immunity), must be expressed, not implied. The legislature has shown over the years in different areas that it knows how to word express exceptions. In fact, within § 6–8–104(g), in which the Court claims to find an implication of confidentiality for the requested list, the legislature used obvious language to except from disclosure the written comments of a chief of police: "Submitted comments shall not be considered a public record." It would have been easy for the legislature to use like language

in subsection (g) or subsections (n) and (z) of § 6–8–104 had the legislature intended to except the requested list from disclosure. That it did not is dispositive for me.

[¶ 25] Let me say a few words about "the very purpose" of the concealed weapons law. The Court identifies that purpose to be concealing the identity of concealed weapon permit holders from general public knowledge. I am not so sure. As I shall explain, I am more inclined to think that the law's purpose is to protect the law-abiding citizen and the public from the violent crimes which have become all too prevalent in today's society. Once upon a less crime-ridden time, many states, including Wyoming,[1] had laws that prohibited an individual from carrying a concealed weapon. Clayton E. Cramer and David B. Kopel, *"Shall Issue": The New Wave of Concealed Handgun Permit Laws*, 62 Tenn. L.Rev. 679, 681 (1995). Such laws were "designed to prevent a person with a weapon from taking some undue advantage over an unsuspecting adversary who is not aware that the person is carrying a weapon." *Dorelus v. State*, 747 So.2d 368, 370 (Fla. 1999) (internal quotation marks omitted). Stated in a slightly different way, secondary authority informs us that the object of the prohibition was "clearly that of protecting the public by preventing an individual from having on hand a weapon of which the public is unaware, and which might be used by that individual in a fit of passion." 79 Am.Jur.2d *Weapons and Firearms* § 8 (1975).

[¶ 26] In Wyoming, in 1957, the legislature established a "discretionary issue" procedure under which county sheriffs in their discretion could issue permits to carry weapons to "travelers, merchant police, private detectives, or other persons who may be required by their work, vocation or profession to carry a weapon or weapons." 1957 Wyo. Sess. Law ch. 201, § 1; Wyo. Stat. § 6–239 (Michie 1957). Factors bearing on the sheriff's exercise of discretion were the applicant's general reputation and previous criminal record; the sheriff could revoke an issued permit at any time if the sheriff believed that the permitee's conduct was contrary to the

best interests of the state or its subdivisions. *Id.* In 1994, the Wyoming legislature dramatically changed the law. 1994 Wyo. Sess. Law ch. 41, § 1. The legislature abolished the "discretionary issue" system and replaced it with the "shall issue" system we have today which vests in the state attorney general the authority to issue concealed weapon permits. *Id.* Thus, Wyoming joined the growing number of states that have facilitated more liberal issuance of permits. John C. Lenzen, *Liberalizing the Concealed Carry of Handguns by Qualified Civilians: The Case For "Carry Reform,"* 47 Rutgers L.Rev. 1503, 1504 n. 4, 1506–07 (1995). According to some, "[c]arry reform is a legislative movement in which the states are unequivocally rejecting the assumption that civilians are incompetent to carry handguns in preparation for the lawful resistance of criminal aggression." *Id.* at 1507. It has been reported that

> empirical evidence from those states with liberal concealed carry laws strongly suggests that carry reform ... [does] not threaten public safety. Other data indicate that more prevalent concealed carry may be a powerful weapon in the fight against violent crime in two ways: (1) empowering individuals to defend against violent crime; and (2) deterring the commission of violent crimes in general.

*Id.* at 1513. And, it has been said that "[t]aken as a whole, [the] evidence suggests that more widespread and well-publicized concealed carry may reduce the rates of violent crime by deterring criminal behavior." *Id.* at 1514. Moreover, it has been said that "the available evidence suggests that gun ownership among potential crime victims has as much, if not more, of an effect on violent crime than the activities of the entire criminal justice system." *Id.* at 1536.

[¶ 27] In the final analysis, whether the validity of these reports, evidence, data, and statements is borne out in the long run remains to be seen. But it cannot be doubted that the pendulum of public policy, as declared by the legislatures of the carry reform

---

1. Before statehood in 1890, a Wyoming Territorial law prohibited carrying concealed weapons. 1890 Wyo. Terr. Sess. Laws ch. 73, § 96. Upon statehood, this became state law. 1890 Wyo. Sess. Laws ch. 35, § 1. It remained law until amendment in 1957. 1957 Wyo. Sess. Laws ch. 201, § 1; Wyo. Stat. § 6–239 (Michie 1957).

states, has swung over the century from protecting the public by preventing an individual from carrying a weapon to protecting the law-abiding individual and the public from violent crimes by permitting the law-abiding individual to carry a weapon. And, given that dramatic swing of the pendulum, I am more inclined to think that the true purpose of the current concealed weapon law is one of protecting the law-abiding citizen and the public from violent crimes which have become all too commonplace in our contemporary times.

[¶ 28] Let me say a few words now about the applicability of the 2001 amendment to Franscell's request. Because the Court decided this case on a different ground, it did not address the issue whether the 2001 amendment, by which the legislature expressly designated the requested list not to be a public record, applied so as to preclude disclosure. The parties did address that issue, and I shall, albeit briefly, because I think that that amendment applies in this case. Pagel, the custodian of the requested list, relied on the 2001 amendment as an alternative ground for non-disclosure. The amendment, which was expressly retroactively applicable to concealed weapon permit records, became effective February 20, 2001, before the entry of the district court's order of March 21, 2001, requiring Pagel's disclosure of the requested list to Franscell. In their respective legal briefs on this point and related points, Pagel and Franscell thrust and parry concerning whether the district court decided the case on February 1, 2001, the date of the hearing, or on March 21, 2001, the date of the court's order, and whether the legislature can alter the outcome of a case by changing the law retroactively. I shall not go into the details of the respective arguments on these several points; it is, I think, a close call. I am more inclined to conclude, however, that Pagel has the better legal position. Therefore, I would hold that the legislature's 2001 amendment, with its express designation that the requested list is not a public record, is dispositive. Because the legislature designated that the requested list is not a public record, Pagel need not have disclosed it.