2008 WY 152

SUBLETTE COUNTY SCHOOL DIS-
TRICT NUMBER NINE, State of Wyo-
ming and Sublette County School Dis-
trict Number One, State of Wyoming,
Appellants (Plaintiffs),

and

Campbell County School District Number
One, State of Wyoming; Fremont Coun-
ty School District No. 24, State of Wyo-
ming; and Lincoln County School Dis-
trict Number One, State of Wyoming,
Appellants (Intervening Plaintiffs),

v.

Jim McBRIDE, State Superintendent of
Public Instruction, in his official
capacity, Appellee (Defendant).

No. S–08–0073.

Supreme Court of Wyoming.

Dec. 19, 2008.

Representing Appellants: Mark W. Gifford and Kelley A. Anderson of Law Offices of Gifford & Brinkerhoff, Casper, Wyoming, for Appellant Sublette County School District Number One; Tracy J. Copenhaver of Copenhaver, Kath, Kitchen & Kolpitcke, LLC, Powell, Wyoming, for Appellant Sublette County School District Number Nine and Lincoln County School District Number One; Ford T. Bussart of Bussart, West & Tyler, P.C., Rock Springs, Wyoming, for Appellant Campbell County School District Number One; Joel M. Vincent of Vincent & Vincent, Riverton, Wyoming, for Appellant Fremont County School District No. 24. Argument by Messrs Bussart, Copenhaver and Gifford.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Michael R. O'Donnell, State's School Finance Counsel, Special Assistant Attorney General. Argument by Mr. O'Donnell.

Before VOIGT, C.J., and GOLDEN, KITE, and BURKE JJ.; DONNELL, D.J.

DONNELL, District Judge.

[¶ 1] Appellants, five Wyoming school districts, filed a declaratory judgment action questioning the continued constitutionality of Wyo. Stat. Ann. § 21–13–102(c) (LexisNexis Supp.2006), following an amendment to Wyoming Constitution, Article 15, Section 17 (the 2006 Amendment), passed during the 2006 General Election. More specifically, those districts seek a ruling that the 2006 Amendment authorized, but did not mandate, the Wyoming Legislature to repeal or amend § 21–13–102(c) (2006). The statute was not amended for a period of sixteen (16) months after the Amendment's effective date, and the districts argue that § 21–13–102(c) (2006) remained in effect during that time.

[¶ 2] Depending upon the conclusion as to the constitutionality of § 21–13–102(c) (2006), the school districts also ask for a declaration that any change in the law caused by the implied repeal of § 21–13–102(c) (2006) cannot be applied retroactively. They assert this retroactive application would be an unconstitutional *ex post facto* application of the law.

## CERTIFIED QUESTIONS

[¶ 3] At the request of the parties, the district court presented the following certified questions to this Court for consideration:

1. Is Wyo. Stat. Ann. § 21–13–102(c) [(2006)] [constitutional] in light of the amendment to Article 15, Section 17 of the Wyoming Constitution?

2. Do ex post facto principles impact the Wyoming Department of Education's (Department) calculation of rebated revenue if the districts have encumbered, obligated, or spent any of the funds sought by the Department?

## RELEVANT FACTS AND PROCEDURAL HISTORY

[¶ 4] In *Washakie County School District Number One v. Herschler,* 606 P.2d 310 (Wyo.1980), this Court declared Wyoming's local wealth-based scheme of educational financing unconstitutional. We determined that the financing system then in place failed to provide equal educational funding state-

wide in violation of the Wyoming Constitution, Article 1, Section 34, and Article 7, Section 1, requiring a "uniform system of public instruction." *Id.* at 340.

[¶ 5] In response, the electors of the State of Wyoming, at the General Election of 1982, then amended Wyoming Constitution, Article 15, Section 17 to provide:

> There shall be levied each year in each county of the state a tax of not to exceed six mills on the dollar of the assessed valuation of the property in each county for the support and maintenance of the public schools. This tax shall be collected by the county treasurer and disbursed among the school districts within the county as the legislature shall provide. The legislature may authorize boards of trustees of school districts to levy a special tax on the property of the district. The legislature may also provide for the distribution among one or more school districts of **not more than three-fourths of any revenue** from the special school district property tax in excess of a state average yield, which shall be calculated each year, per average daily membership.

Wyo. Const. art. 15, § 17 (Michie Cumm. Supp.1983) (the 1982 Amendment) (emphasis added).

[¶ 6] Thereafter, in 1983, the Legislature enacted enabling legislation as follows:

> The revenue to be rebated under subsection (b) of this section **shall not exceed seventy-five percent (75%) of the difference** between the revenue received by a school district from the mandatory levies per average daily membership provided by subsection (a) of this section and the statewide revenue per average daily membership from twenty-five (25) mills, multiplied by the average daily membership of the school district. Annually, on or before July 15, the department using average daily memberships and assessed valuations from the preceding fiscal year, shall compute maximum recapture under this subsection for each district and the final amount of recapture computed under subsection (b) of this section for the preceding fiscal year. If any district rebated more revenue to the state during the preceding fiscal year than the maximum computed, or than the amount to be rebated under subsection (b) of this section as computed using actual data from the preceding fiscal year, the department shall rebate the excess to the district. If any district rebated less revenue to the state during the preceding ·fiscal year than the amount to be rebated under subsection (b) of this section, as computed using actual date from the preceding fiscal year, the district shall rebate the difference to the state.

Wyo. Stat. Ann. § 21–13–102(c) (Michie Cumm. Supp.1984) (emphasis added). The purpose of this statute was to give effect to the 1982 Amendment. It is this statute that is at issue today.

[¶ 7] Essentially, the 1982 Amendment and § 21–13–102 (1983), as they existed in 1983, reduced the inequalities created by wide disparities in local property tax revenues. Instead, locally generated revenues were "rebated" to the State of Wyoming and deposited into the Wyoming Public School Foundation Program Account (foundation account), a state account, to be redistributed to all Wyoming school districts for the education of all of Wyoming's school children. Wyo. Stat. Ann. § 21–13–102(b). The Department then determined the amount of funding to which each school district was entitled. Wyo. Stat. Ann. § 21–13–102(e). If the local revenue generated in the district was insufficient (e.g., less than the district's entitlement), then the Department would remit the difference between the local funding and the entitlement to the district from the foundation account.

[¶ 8] The unique aspect of the 1982 Amendment and the 1983 enabling legislation was that it limited the rebate amount to seventy-five percent of the difference between the designated local revenue sources and the statewide average of those same sources. This allowed some school districts to retain a portion of their locally generated revenues (the portion in excess of their entitlement that exceeded seventy-five percent of the statewide average of those revenues) and not remit them to the foundation account for redistribution to all school districts, a concept

that came to be known as "recaptured rebate."

[¶ 9] Since 1982, in a series of opinions, this Court continued to hold that educational funding for Wyoming schoolchildren must be a function of state, not local, wealth. *Campbell County Sch. Dist. v. State*, 2008 WY 2, 181 P.3d 43 (Wyo.2008) (*Campbell IV*); *State v. Campbell County Sch. Dist.*, 2001 WY 90, 32 P.3d 325 (Wyo.2001) (*Campbell III*); *State v. Campbell County Sch. Dist.*, 2001 WY 19, 19 P.3d 518 (Wyo.2001) (*Campbell II*); *Campbell County Sch. Dist. v. State*, 907 P.2d 1238 (Wyo.1995) (*Campbell I*).

[¶ 10] In a continued effort to address this Court's concerns about the ongoing unconstitutional nature of the then-existing school finance scheme, the Wyoming State Legislature passed Original Senate Joint Resolution No. 1 during the 2006 Budget Session. http://legisweb.state.wy.us/2006/Enroll/SJ0001.pdf (last visited December 17, 2008). This Joint Resolution proposed that an amendment to Wyoming Constitution, Article 15, Section 17 be placed before Wyoming voters in the 2006 General Election. The proposal passed the Legislature and, in 2006, the voters of Wyoming amended the Wyoming Constitution by eliminating the "not more than three-fourths" language from Article 15, Section 17. The 2006 Amendment resulted in the following constitutional provision:

There shall be levied each year in each county of the state a tax of not to exceed six mills on the dollar of the assessed valuation of the property in each county for the support and maintenance of the public schools. This tax shall be collected by the county treasurer and disbursed among the school districts within the county as the legislature shall provide. The

legislature may authorize boards of trustees of school districts to levy a special tax on the property of the district. The legislature may also provide for the distribution among one (1) or more school districts of **any revenue** from the special school district property tax in excess of a state average yield, which shall be calculated each year, per average daily membership.

Wyo. Const. art. 15, § 17 (2007) (emphasis added). This 2006 Amendment was effective November 15, 2006. *Id.* at annot. "2006 amendment."

[¶ 11] Despite some anticipation that the 2006 Amendment would generate new enabling legislation or, at the very least, a change in the existing enabling legislation, as codified in § 21–13–102(c) (2006), the Fifty-Ninth Wyoming Legislature neither repealed nor amended § 21–13–102(c) (2006) during the 2007 Legislative Session. While the Legislature considered new enabling legislation, proposed as Senate File 0046,[1] that would have repealed § 21–13–102(c) (2006), the Legislature ultimately took no action on the matter.[2]

[¶ 12] In March 2007, the districts were notified by the Department of Education that it was demanding payment of a one hundred percent rebate after November 15, 2006. In essence, the Department interpreted the 2006 Amendment as necessarily repealing § 21–13–102(c) (2006) and its seventy-five percent cap on the rebated amount. Accordingly, the Department directed the districts to pay the previous twenty-five percent "recaptured" difference for the 2006–2007 fiscal year into the foundation account. The districts objected, arguing, in some cases, that they already had expended those funds and were obligated to perform under preexisting contracts.

---

1. Senate File 0046, Section 2 reads: "W.S. 21–13–102(c) and 2006 Wyoming Session Laws, Chapter 37, Section 6(b) are repealed." http://legisweb.state.wy.us/2007/Engross/SF0046.pdf (visited December 17, 2008). The legislature also proposed enabling legislation to allow school districts to retain their recaptured rebate funds if payment of those funds would interfere with any contractual obligations entered into by the district as of January 1, 2007. For whatever reason, Senate File 0046 was not passed by the Legislature.

2. In 2008, the Wyoming Legislature repealed that part of Wyo. Stat. Ann. § 21–13–102 (2006) that described the application of the earlier version of Wyoming Constitution, Article 15, Section 17 and its seventy-five percent limitation. *See* 2008 Wyo. Sess. Laws Ch. 94, § 2. The result is that the issues presented to this Court affect only the 2006–2007 and 2007–2008 fiscal years for the school districts and the rebated funds at issue during those years.

[¶ 13] The impasse between the five Appellant school districts and the Department led to the filing of the present declaratory judgment action and, ultimately, to the certification of the questions now presented to this Court.

### STANDARD OF REVIEW

[¶ 14] Certified questions are reviewed pursuant to W.R.A.P. 11. *Pinnacle Bank v. Villa*, 2004 WY 150, 100 P.3d 1287, 1289 (Wyo.2004). While traditional standards of review are only "tangentially" of service in cases involving certified questions, where a case seeks a determination on the constitutionality of a statute, it is a question of law to be reviewed *de novo*. *Muller v. Jackson Hole Mountain Resort*, 2006 WY 100, ¶ 9, 139 P.3d 1162, 1165 (Wyo.2006); *Reiter v. State*, 2001 WY 116, ¶ 7, 36 P.3d 586, 589 (Wyo.2001).

### ANALYSIS

**I. POST–AMENDMENT STATUS OF WYO. STAT. ANN. § 21–13–102(c) (2006)**

[¶ 15] Although the parties phrase their certified question in terms of "constitutionality," the issue that first must be determined is whether the 2006 Amendment impliedly repealed Wyo. Stat. Ann. § 21–13–102(c) (2006). If § 21–13–102(c) was impliedly repealed by the adoption of the Amendment, then the districts may well be required to rebate to the Department one hundred percent of the difference between their local funding revenues and the statewide average revenue for the 2006–2007 and 2007–2008 fiscal years,[3] as opposed to the historical amount of seventy-five percent. If § 21–13–102(c) (2006) was not impliedly repealed, then the five school districts are obligated only to rebate the traditional seventy-five percent rebate for those two years and may retain the remaining twenty-five percent, which roughly translates into a collective dispute over $97,550,113.36.

3. More specifically, the one hundred percent rebate amount would apply only to that portion of the 2006–2007 fiscal year from November 15, 2006, the effective date of the Amendment, until June 20, 2007. Thereafter, for the 2007–2008 fiscal year, the Department seeks a one hundred

[¶ 16] As a general rule, a statute in effect at the time of a constitutional amendment is not affected unless the amendment expressly abrogates the pre-existing rights contained in the statute or unless the amendment is clearly and irreconcilably in conflict with the statute. *See* 16 Am.Jur.2d *Constitutional Law* § 48 (1998). Here, the parties agree that there is no express abrogation of Wyo. Stat. Ann. § 21–13–102(c) (2006). This Court, then, must decide if there is an obvious, clear, and strong conflict between the 2006 Amendment and § 21–13–102(c) in effect at that time. *See* 16 Am.Jur.2d *Constitutional Law* § 49 (1998). If the provisions of § 21–13–102(c) (2006) are inconsistent with, or repugnant to, the provision of Wyoming Constitution Article 15, Section 17 (2006) such that the statutory provisions are rendered obnoxious or ineffective, then the statute must be deemed impliedly repealed. *Id.*; *Mathewson v. City of Cheyenne*, 2003 WY 10, ¶ 11, 61 P.3d 1229, 1233 (Wyo.2003); *Shumway v. Worthey*, 2001 WY 130, ¶ 15, 37 P.3d 361, 367 (Wyo.2001); *Parker v. Energy Dev. Co.*, 691 P.2d 981, 986 (Wyo.1984); *Johnson v. Safeway Stores, Inc.*, 568 P.2d 908, 912 (Wyo.1977).

[¶ 17] As in any case addressing statutory interpretation, this Court follows the well-established principles of statutory construction:

Our rules of statutory construction are well known and we will not repeat them at length. *See Pagel v. Franscell*, 2002 WY 169, ¶ 9, 57 P.3d 1226, 1230 (Wyo.2002) (*quoting Wyoming Community College Com'n v. Casper Community College Dist.*, 2001 WY 86, ¶¶ 16–18, 31 P.3d 1242, 1249 (Wyo.2001)). We will, however, note a few particularly pertinent rules of construction. **Our primary concern is legislative intent, which intent must be ascertained from the words of the statute.** *Id.* Construction is unnecessary where statutory

percent rebate for the entire year. Because the Wyoming Legislature repealed Wyo. Stat. Ann. § 21–13–102(c) (2006) in 2008, the issue is resolved for the 2008–2009 fiscal year and every year thereafter. *See* 2008 Wyo. Sess. Laws Ch. 94, § 2.

language is unambiguous. *Id.* **The intent of an unambiguous statute is determined from the ordinary and obvious meaning of the words used.** *In re Wilson,* 2003 WY 105, ¶ 6, 75 P.3d 669, 672 (Wyo.2003) *(quoting Wyoming Dept. of Transp. v. Haglund,* 982 P.2d 699, 701 (Wyo.1999)). " 'When the words are clear and unambiguous, a court risks an impermissible substitution of its own views, or those of others, for the intent of the legislature if any effort is made to interpret or construe statutes on any basis other than the language invoked by the legislature.' " *Pagel,* 2002 WY 169, ¶ 9, 57 P.3d at 1230 *(quoting Wyoming Community College Com'n,* 2001 WY 86, ¶ 16, 31 P.3d at 1249)). " 'A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability.' " *Pagel,* 2002 WY 169, ¶ 9, 57 P.3d at 1230 *(quoting Wyoming Community College Com'n,* 2001 WY 86, ¶ 17, 31 P.3d at 1249)).

*In re Walsh,* 2004 WY 96, ¶ 3, 96 P.3d 1, 2 (Wyo.2004) (emphasis added). *See also Mgmt. Council of the Wyo. Legislature v. Geringer,* 953 P.2d 839, 843 (Wyo.1998).

■ [¶ 18] The 2006 Amendment provides, in pertinent part: "The legislature **may also provide** for the distribution **among one (1) or more school districts of any revenue** from the special school district property tax in excess of a state average yield[.]" Wyo. Const., art. 15, § 17 (2007) (emphasis added). Despite the way the proposed 2006 Amendment may have been postured to the Wyoming voters in 2006,[4] this plain and unambiguous language permits the Wyoming Legislature to retain discretion in determining the distribution and amount of excess revenue to be rebated from the school districts to the State. Further, as the Department concedes, the rebate portion of the Amendment is not self-executing; it requires enabling legislation to be given effect in that the Amendment authorizes, but does not mandate, that the Legislature act.

[¶ 19] Reading the language of the Amendment that permits the Wyoming Legislature to redistribute *any* special school district property tax funds among *one or more* school districts, this Court is at a loss to find an inherent or irreconcilable conflict between the 2006 Amendment and § 21–13–102(c) (2006) as it existed at the time in which the Legislature chose to redistribute seventy-five percent of those tax funds. That legislative determination falls squarely within the parameters of the 2006 Amendment; Wyo. Stat. Ann. § 21–13–102(c) (2006) is consistent with the language found in Wyoming Constitution Article 15, Section 17 (2006).

[¶ 20] In advocating this conclusion, Appellants point to the fact that the Wyoming Legislature, in its 2007 Legislative Session, debated Senate File 0046, but failed to pass, proposed changes to § 21–13–102(c) (2006). On the other hand, in disputing this conclusion, the Department relies upon Wyoming Constitution Article 7, Sections 1 and 9, and Article 1, Section 34, which, when read together, establish education as a fundamental interest in Wyoming. When these constitutional provisions are interpreted in light of this Court's previous school finance decisions that mandate that the Wyoming Legislature provide an "equal opportunity for a quality education" for all Wyoming school children, *see Campbell I,* 907 P.2d at 1263, and the ballot language presented to Wyoming voters at the time of the 2006 General Election, a fair argument may be made that the 2006

---

4. The ballot language for the 2006 Amendment read:

The Wyoming Supreme Court has held that school funding must be equalized among all school districts in the state.

The adoption of this amendment would repeal the current limitation on the amount of property tax revenues that may be redistributed by the state through the School Foundation Program Account from school districts with greater property tax revenues to other school districts in the state.

The ballot language can be found at the Elections tab of the Wyoming Secretary of State's home page http://soswy.state.wy.us (visited December 17, 2008). The clear implication of this language is that the Amendment served to eliminate the seventy-five percent ceiling on the rebate amount so as to "equalize" school funding, which then would require wealthier school districts to rebate one hundred percent of their excesses into the foundation account.

Amendment must be construed so as to prohibit the Wyoming Legislature from distributing funds for education in a wealth-based manner (e.g. with a rebate amount of anything less than one hundred percent).

[¶ 21] While this Court is cognizant of the Department's policy concerns, the fact remains that we cannot stray beyond the "four corners" of the plain and unambiguous language contained in the 2006 Amendment. *In re Walsh,* ¶ 3, 96 P.3d at 2; *Geringer,* 953 P.2d at 843. Where, as here, the provisions of the pre-existing statute are not inconsistent with the subsequent constitutional amendment, there is simply no basis by which to declare the statute impliedly repealed.[5]

[¶ 22] While the Department argues that this Court must give effect to the premise that "an amendment means change was intended," *Cantrell v. Sweetwater County School District No. 2,* 2006 WY 57, ¶ 11, 133 P.3d 983, 987 (Wyo.2006) (citation omitted), this Court's conclusions do just that: The Court presumes that the 2006 Amendment intended to remove the seventy-five percent cap on rebates paid by the school districts to the foundation account; what it did not do, without further legislation, was require that the amount be changed to one hundred percent. Quite simply, Wyo. Stat. Ann. § 21–13–102(c) (2006) remained effective and in effect after the 2006 Amendment until the Legislature expressly repealed the statute in 2008.

[¶ 23] Having argued that § 21–13–102(c) (2006) was not impliedly repealed by the 2006 Amendment, and perhaps with an eye toward the flexible nature of the current Wyoming Constitution, Article 15, Section 17, the five Appellant school districts also would have this Court go one step further in declaring that § 21–13–102(c) (2006) did not create unconstitutional, wealth-based disparities in the amount of education funding distributed by the State, even with the seventy-five percent cap. The districts argue that unconstitutional inequality is related solely to funding levels that primarily or predominantly depend upon local wealth, as opposed to funding levels that simply permit educational enhancements based on local wealth. For this proposition, *see Campbell II,* 2001 WY 19, ¶ 120, 19 P.3d at 557. They hint that this Court historically approved of the seventy-five percent limit on the rebate, thereby equally approving of the potential twenty-five percent rebate recapture.

[¶ 24] In previous decisions, this Court commented on the nature of the seventy-five percent rebate limit in the context of the educational funding system as a whole, spe-

---

5. It is worth noting that the Department relies upon Senate File 54, enacted during the 2008 Legislative Session as support for its position. That legislation, which repealed Wyo. Stat. Ann. § 21–13–102(c) (2006), also provided the following commentary:

(a) By adopting this act, the legislature clarifies application of the 2006 amendment to Article 15, Section 17 of the Wyoming Constitution, as adopted by the Wyoming electorate, certified by the state canvassing board and proclaimed adopted by the governor in accordance with W.S. 22–20–108. **It is the understanding and intent of the legislature that at the time the 2006 amendment to Wyoming Constitution, Article 15, Section 17 was certified and proclaimed adopted, W.S. 21–13–102(c), 2006 Wyoming Session Laws, Chapter 37, Section 6(b) and the provision within W.S. 21–13–313(g) repealed by section 1 of this act were all superseded and effectively repealed by such adoption.**

(b) **By adopting this act, the legislature further intends to clarify that sections 1 and 2 of this act apply to school district revenues for school year 2006–2007 and each school year** thereafter. Revenues which would have been subject to W.S. 21–13–102(c) but for adoption of the amendment to Article 15, Section 17 of the Wyoming Constitution as specified under subsection (a) of this section are not and were not available for school district budgeting and were not subject to provisions under W.S. 16–4–101 through 16–4–124 and 21–3–110(a)(vi) pertaining to school district budgeting procedures....

2008 Wyo. Sess. L. Ch. 94 §§ 2–3 (emphasis added).

However, statutory interpretation is a matter for the judiciary, not the legislature. "A subsequent Legislature has no authority to place a legislative construction upon an existing legislative act: If it was intended solely as a legislative construction of a previously existing statute, then it is of no effect whatever." *See Protest of the 1990–1991 Budget of Vo–Tech # 22 v. Metro Area Voc.-Tech. Sch. Dist. No. 22,* 848 P.2d 30, 33 (Okla.Civ.App. 1992). That being said, the 2008 Wyoming Legislature had no ability to make after-the-fact statements of legislative intent that run contrary to the clear and unambiguous language of the 2006 Amendment.

cifically noting the ability of certain districts to make use of some local funds to provide for improvements and enhancements. *See, e.g., Campbell IV,* 2008 WY 2, ¶ 128, 181 P.3d at 82 (upholding a school district's right to provide local enhancements with money raised locally or through property taxes not subject to recapture); *Campbell III,* 2001 WY 90, ¶ 27, 32 P.3d at 331 (acknowledging a school district's right to rely upon some local funding); *Campbell II,* 2001 WY 19, ¶ 126, 19 P.3d at 560 (referring to the ability of districts to build world-class facilities funded by property taxes not subject to recapture under the constitutional provision). However, in making these comments, largely *dicta,* this Court never directly considered the constitutionality of the seventy-five percent rebate limit. The remarks were, at most, a neutral observation of the fact that, under the previous legislation, excess rebate funds could be recaptured by the school districts as a possible source of funding for local enhancements. Appellants should not read these previous comments as holdings that the seventy-five percent rebate limit, in and of itself, was constitutional; that determination has not yet been made. Indeed, that question has never been squarely presented to us.

[¶ 25] Insofar as any current request that this Court make a finding that the previous version of Wyoming Constitution, Article 15, Section 17 and its implementing statute, Wyo. Stat. Ann. § 21–13–102(c) (2006), were constitutional or that they did not create unconstitutional disparities in the amount of education funding distributed by the State to the various school districts, this Court has not, at this time, been presented with sufficient evidence to make any determination of the sort. We decline the districts' invitation to do so now.

## II. *EX POST FACTO* PRINCIPLES

[¶ 26] In light of this Court's conclusion that the 2006 Amendment to Wyoming Constitution, Article 15, Section 17 did not impliedly repeal Wyo. Stat. Ann. § 21–13–102(c)

(2006), the five Appellant school districts are not required to rebate the additional twenty-five percent of their excess local funds for 2006–2007 and 2007–2008 fiscal years. That result necessarily disposes of the second certified question regarding whether *ex post facto* principles impact the Department's efforts to collect additional rebated funds from the school districts for these two years.

## CONCLUSION

[¶ 27] The Court concludes that the 2006 Amendment to Wyoming Constitution, Article 15, Section 17 did not impliedly repeal Wyo. Stat. Ann. § 21–13–102(c) (2006). That statute remained in effect until its express repeal in 2008, and the seventy-five percent limit on the special school district property tax rebate imposed by § 21–13–102(c) (2006) remained in place for the 2006–2007 and 2007–2008 fiscal years for all Wyoming school districts. Accordingly, the five Appellant school districts were entitled to recapture any rebate amounts in excess of the seventy-five percent cap and are not now obligated to pay those sums over to the Department. Having so concluded, the Court declines to make any determination on the constitutionality of the now-repealed seventy-five percent cap. Finally, the determination that Appellants are entitled to retain their excess local funds for 2006–2007 and 2007–2008 moots the second certified question.

[¶ 28] The answer to the District Court's first Certified Question is "yes" in the sense that § 21–13–102(c) (2006) was not impliedly repealed by the 2006 Amendment. This matter is remanded to the District Court for further action as may be appropriate and consistent herewith.